## COOK v. BROWN.

A co-tenant is a competent witness for another co-tenant in an action brought by the former to recover his share of the premises of a disseizor; he not being a party to the suit, and his interest being in the question only.

A verdict will not be set aside for the admission of immaterial evidence, unless the court can see that it must have influenced the jury in their decision.

It is not the ordinary practice in this State for the court to express opinions in regard to the weight of evidence; but it is not irregular for them to make such suggestions in relation to the facts as they may suppose will be useful to the jury, the matter being left to them for decision.

The rule in this State does not require that before declarations of a witness can be proved for the purpose of contradicting his testimony, the witness must himself be asked whether he made the declarations.

To make the delivery of a deed effectual, the grantor must part with all control over it.

If a deed is placed in the hands of a depositary, to be delivered to the grantee upon the death of the grantor, provided it is not previously recalled, but the grantor reserves the right and power of recall at any time, it is not a good delivery.

WRIT OF ENTRY, dated January 23, 1852, to recover three sevenths of the home farm of Nancy Brown, deceased, and of the wood lot adjoining said farm. The writ alleges a seizin within thirty years, and a disseizin, within that time, by the defendant. Plea, *nul disseizin*.

It appeared that the whole real estate formerly belonged to William Fifield, (who died in 1839,) and was by him devised to his sister, Nancy Fifield, who afterwards married Stephen Brown, the defendant in this suit. Nancy Fifield was in the possession of the property from the death of William, in 1839, until her marriage with the defendant, in 1848, and continued to live with her husband, upon the premises, until her death, June 5, 1851. Her real estate descended to seven children of her brother Peter. The plaintiff gave, in evidence, a deed from two of said children to himself and one Jones, dated July 22, 1851, conveying all the rights of the grantors to the estate of Nancy Brown. The defendant offered a deed from Nancy Brown and her husband to Richard French Fifield, commonly called French

Fifield, dated and acknowledged the 4th day of January, 1851, and recorded July 2, 1851, and purporting to convey certain land, described as follows, to wit:

"A certain tract of land, situated in said Candia, containing one hundred acres, more or less, it being the homestead farm on which we now live, and late the homestead of William Fifield, late of Candia, deceased. Also an undivided third part of the farm adjoining said homestead, known by the name of the Rowe place. Reserving to ourselves the possession and income of said farms during our natural lives, or the lifetime of either of us."

There were no children by the marriage, and the plaintiff's counsel contended that the defendant took nothing by the reservation after the death of his wife, and objected, that it was not competent to prove title in a third person, as an answer to the action. The deed was admitted, subject to exception, and the questions are presented with the other questions in the case. The consideration named in the deed is ten dollars. Richard French Fifield was a son of John Fifield, Jr., who was a son of John C. Fifield, brother of William Fifield and Nancy Fifield. John C. Fifield died before his brother William. At the date of the deed in controversy, Richard F. Fifield was a boy fourteen years of age. About the time the deed bears date he went to Mrs. Brown's, and lived with them until her decease, and after that event continued with Mr. Brown until October, 1853, when he died.

The court having overruled the objections to the admissibility of the deed, the plaintiff took the following positions, to wit: The deed was never delivered. Mrs. Brown was a *non compos*. And there was testimony introduced upon each point. Upon the second point, a daughter of Peter Fifield was introduced as a witness, and it was objected that she was interested to have a co-tenant get possession, and was, therefore, incompetent; but she was admitted, subject to exception. Her testimony had no bearing upon the question of delivery, unless the following can be considered as affecting it, viz. : " The week before she died I was at Mrs. Brown's, to watch with her. She got up in the

bed, and said she would come out, and I had to hold her on the side of the bed. She said three or four men were round the house, trying to kill her, and she would not lay in the bed. She said they were after her property. She said they would never get it, but I would know who would get it after she was dead. I told her if she did not leave off talking and lay down, I would call Mr. Brown. She said she did not want him in, and I did not call him."

To prove the execution of the deed, the defendant called Mrs. Bickford, whose name appears as a subscribing witness. She testified that in January, 1851, she saw Mr. Brown and his wife sign the deed, and saw Mr. Lane, the other subscribing witness, put his name to it as a witness, and that she also signed as a witness. No other persons were in the room. Nothing was said in respect to the contents or objects of the deed, and she came out, leaving them in the room together. She did not see the deed delivered, and the defendant endeavored to prove a delivery by other evidence. Mr. Lane died before the death of Mrs. Brown. The deed was in his possession at the time of his death, and after his death was given up by his administrator to Mr. Brown. The declarations of Mrs. Brown on that occasion were proved by the plaintiff.

The defendant introduced certain depositions, to prove declarations by Mrs. Brown, that she intended to convey to French Fifield, and also that she had conveyed to him. The plaintiff did not appear at the taking, and there was no cross-examination. The court, in summing up the evidence to the jury, called their attention to the fact that there was no appearance, and said to them that although it must not be treated as the defendant's fault that there was no appearance, yet, in weighing the testimony against other evidence, they might not think it as reliable as it would be if there had been a cross-examination; and that they had a right to think so, and make such deduction as they thought proper, from the weight the depositions might otherwise have. No exception was taken to this part of the charge until after the verdict had been returned. The case was finally left

to the jury in the usual way, to decide according to the balance of proof, but without any other qualification of the above suggestion.

The defendant introduced the deposition of Susan E. Kimball, to prove that Mrs. Brown, after the death of Mr. Lane, told her husband to go and get the deed from his administrator, and keep it for French Fifield. The plaintiff called Edward Harris, who testified that the evening before Susan Kimball gave her deposition, at the defendant's house, she said she had got to go up there and swear, but she did not care any thing about it, for "Uncle Steve," the defendant, had got it all written off, and that she was going to set up that night and learn it. The defendant's counsel objected to the competency of this evidence, but the objection was overruled, and he excepted; and he afterwards called Susan Kimball, who denied that she said what the witness had imputed to her. The plaintiff had not questioned her upon the subject.

The defendant, as administrator of the estate of Mrs. Brown, returned an inventory, and in it was included, as part of her estate, the land in dispute. The inventory is in the hand-writing of one Henry Eaton, but it was proved that the defendant was present with the appraisers, and went over the farm with them, and that the inventory was signed and sworn to by him on the twenty-first day of July, 1851. This inventory was offered as an admission that Mrs. Brown owned the land included in the deed, at the time of her death, and as showing that the deed had never been effectually executed and delivered, and it was admitted by the court, subject to exception. The defendant, in explanation, offered to prove "that Brown, with Eaton, went to Judge Sullivan for advice about Brown's rights, by virtue of the deed to Richard F. Fifield, and that thereupon Judge Sullivan told them (that, without doubt, the deed passed a good title to Richard F. Fifield, but about the reservation he did not know,) and directed Brown to inventory the whole estate, real and personal, and thereupon it was done as he directed." The plaintiff's counsel objected to this, unless the defendant would call

Judge Sullivan to prove it. The court ruled that the part in the parenthesis could not be admitted, and the defendant did not prove any part of it, but excepted to the ruling of the court.

Upon the subject of delivery, the defendant made a written request for instructions, in the following terms: "If it was agreed between Mr. and Mrs. Brown and Richard French Fifield that the latter should live with them during the life of Mrs. Brown, and in consideration thereof they would give him the farm in question, " reserving to themselves the possession and income of said farm during their natural lives or the lifetime of either of them;" and if in pursuance of said agreement said Richard did go and live with them and remained there as agreed until the death of Mrs. Brown; and upon his so going to live with them they executed a deed of said farm to said Richard, as agreed, and put the same into the hands of Lane for said Richard, the instrument may be considered as the deed of the grantors from the delivery to Lane, and sufficient to pass the estate to Richard, by way of covenant to stand seized to uses, although the grantors reserved the right to revoke the same during the life of Mrs. Brown, if in fact they did not revoke it. If the deed of Brown and wife to Richard French Fifield was, at the time of its execution, put into the hands of Lane by the grantors, there to remain during the life of Mrs. Brown, subject, however, during that time, to be revoked by them, and if not revoked, then to be recorded, the deed may be regarded as the deed of the grantors from the time of the delivery to Lane, if it was not subsequently revoked by them.

This request was denied, and the jury were charged as follows: A delivery may be either absolute or conditional; absolute when to the grantee himself, or some person for him, without the performance of any conditions on his part; conditional, when to a third person for him upon the performance of certain conditions. But in order that a delivery, whether absolute or conditional, may be good, it is essential that the grantor part with his *dominion* over the deed. He must part with it absolutely, if the delivery is absolute, and conditionally, if the delivery is condi-

Cook *v.* Brown.

tional. In this case, if the deed was in the hands of Mr. Lane or of Mr. Brown, with the assent of his wife, to be delivered to French Fifield, either before or after her death, without the grantor's reserving a control over the deed, then there was a good delivery, if she was competent to make one. But if she reserved such a full control over the deed during her life, and to the last moment of her life, there was no delivery. If she always had the right to control the destination of the deed, there was not a delivery; but if she at any time relinquished her right in favor of the grantee, there was a delivery. The question is, whether she always, till her death, continued to have the *right* to recall the deed, if she pleased, and not whether she did in fact recall it. There was evidence tending to prove the different hypotheses made in the charge, and in the request for instructions.

The court instructed the jury that there were two questions, either of which if found for the plaintiff would entitle him to a verdict, viz.: 1. Was Mrs. Brown competent? 2. Was the deed delivered? If they found the first for the plaintiff, any consideration of the other would be unnecessary. But if they found the second for the plaintiff, they would, if they pleased, pass upon the other also; and in case their verdict should be for the plaintiff, they would be inquired of upon which ground they found it. And the jury were told, in explanation, that no doubt was entertained in respect to the law of the first point; but upon the second, exceptions had been taken to the ruling of the court, and, although the ruling was believed to be correct, yet the Superior Court, upon an examination of the subject, might think differently. The jury returned the following verdict: " The jury render their verdict in favor of the defendant, upon the first point, and upon the second point for the plaintiff." The court, after ascertaining by inquiry that the jury had found that Mrs. Brown was competent, but that the deed was never delivered, informed them that upon those facts the verdict should be for the plaintiff, and a general verdict for the demanded premises was then returned by the jury. The defendant

moved that the verdict be set aside, because of said rulings and instructions. The defendant also asks that judgment may be arrested because the writ alleges the seizin and disseizin within thirty years, instead of twenty years.

*Marston,* with whom was *Christie,* for the defendant.

I. The court erred in their instructions to the jury, relative to the weight that should be given to depositions taken without an appearance. How were the jury to know whether any thing, and if any thing, how much should be deducted from the weight of the evidence.

The testimony of honest witnesses is more likely to be strengthened than weakened by a cross-examination.

II. The testimony of Harris as to what he heard Susan E. Kimball, a witness for the plaintiff, say before she testified, was inadmissible. She should first have been asked, on cross-examination, if she said what was imputed to her. She might have denied it. She might have admitted it, and explained how she came to say it. It might have appeared, and would, that she was entitled to full credit, notwithstanding the contradiction. *Conrad* v. *Griffey,* 16 How. U. S. 38. In that case, it is said the rule is founded upon common sense, and is essential to protect the character of the witness.

III. The inventory of Mrs. Brown's estate was improperly admitted, as an admission of the defendant that the deed to Richard French Fifield was not delivered, and that Mrs. Brown owned the land at the time of her death, and, being admitted in evidence, the reason for its being so inventoried was improperly excluded.

The law makes it the duty of the administrator to inventory all the estate of the deceased. The administrator may not know how the title is, and for abundant caution should make an inventory of the estate, as that of the deceased. The administrator could not know whether the facts admitted in this case would constitute a delivery.

IV. This instrument may operate as a covenant to stand

Cook *v.* Brown.

seized to uses. *Shed* v. *Shed,* 3 N. H. 432 ; *Bell* v. *Scammon,* 15 N. H. 394 ; *Barrett* v. *French,* 1 Conn. 354. Such a conveyance has been sustained in favor of remote relations. 2 Hill Abr. 324.

It is not required that the consideration of blood be named in the deed in order to render it operative under the statute of uses. If it appears, from the relation of the parties upon the face of the deed, or by the agreement of the parties, or by proof, it is sufficient to raise an use. *Wallis* v. *Wallis,* 4 Mass. 135 ; *Goodtitle* v. *Petto,* 2 Str. 934.

The existence of another consideration in addition to that of blood will not impede the operation of the deed. 4 Kent 493. In this country, even a pecuniary consideration is sufficient to raise an use by way of covenant to stand seized to uses. 2 Greenl. Cruise 155, note 1 ; Ibid. 158, note 1, and cases there cited. In *Jackson* v. *Dunsbagh,* 1 Johns. Cases 41, this point was expressly decided. See, also, *Pray* v. *Pierce,* 7 Mass. 381 ; 2 Greenl. Cruise 144, note 1.

V. This instrument may operate as a deed of bargain and sale, which requires a valuable consideration, and that constitutes the only essential difference between a covenant to stand seized to uses, and a bargain and sale. Burton on Real Property 95.

There is a consideration of money expressed in the deed, and a further consideration *proved,* viz. : that R. F. Fifield agreed to live and did live with the bargainer until her death. The consideration may be expressed, or it may be proved if not expressed ; and a pecuniary consideration, however small, is sufficient. 3 Greenl. Cruise 138, 143 ; *Bell* v. *Scammon,* 15 N. H. 394 ; *French* v. *French,* 3 N. H. 234 ; *Pritchard* v. *Brown,* 4 N. H. 397.

A freehold *in futuro* will pass by a deed of bargain and sale, and by a covenant to stand seized to uses. *Bell* v. *Scammon,* 15 N. H. 394.

Deeds are to be construed so as to effectuate the intention of the parties. If they cannot operate in one form they shall operate in that, which, by law, will effectuate the intention. *Goodtitle* v. *Bailey,* 2 Cooper 600.

Cook *v.* Brown.

VI. The court erred in not instructing the jury as requested by the defendants. The case finds there was proof of the facts supposed.

The facts supposed bring this case precisely within the precept of the case of *Shed* v. *Shed*, 3 N. H. 432. In that case there was an express reservation of control over the land during the grantor's life, and no express stipulation that it should not be delivered during his life, but should remain subject to his revocation, alteration and control.

We hold that the deed took effect upon the death of the grantor from the first delivery. *Belden* v. *Carter*, 4 Day 66 ; *Wheelwright* v. *Wheelwright*, 2 Mass. 447 ; *Ruggles* v. *Lawson*, 13 Johns. 285.

*Morrison, Fitch & Stanley*, with whom was *Wells*, for the plaintiff.

I. It is the right and duty of the court to make such suggestions and give such instructions to the jury as the evidence seems to warrant, and upon all the facts appears proper. *Patterson* v. *Colebrook*, 9 Foster 94 ; 22 Maine 249 ; 10 Pick. 252 ; 24 Maine 490.

The judge must make such suggestion upon the evidence as he deems most proper. This is a matter which cannot be limited. *Rollins* v. *Varney*, 2 Foster 99 ; *Flanders* v. *Colby*, 8 Foster 34.

The case shows that no exception was taken to the instructions of the court in regard to the depositions, until after the verdict had been returned. This exception cannot therefore avail.

II. The testimony of Harris as to what he heard Susan E. Kimball say, was properly admitted. In this State there is no rule of practice which requires that before the declarations of a witness can be proved for the purpose of contradicting his testimony, the witness himself must be asked whether he made the declarations. *Titus* v. *Ash*, 4 Foster 319, and cases cited ; 22 Maine 184.

III. The ruling of the court in reference to the admission of

the inventory of Mrs. Brown's estate was competent as being an admission on the part of this defendant that the deed had never been delivered, and that the title was in her. If the inventory was properly admitted, it was competent for the defendant to explain any such admission by proper and legal evidence, and not otherwise.

IV. Was the deed ever delivered to Richard French Fifield ?

The delivery of a deed is a question of fact. 11 Vt. 321. To constitute the delivery of a deed, the grantor must part not only with the possession, but with the control of it, and deprive himself of the right to control it. 1 Halstead's Chancery Reports 430. This we understand to be the established doctrine of all the books. The instructions of the court were in accordance with this view of the case, and the only question is, was the ruling of the court correct. We think there can be no doubt in reference to this point. The case of *Parker* v. *Dustin,* 2 Foster 424, is a case directly in point.

But the case at bar is stronger than the case of *Parker* v. *Dustin,* for here it appears that the deed, after its execution, was left in the hands of Lane, and before the death of Mrs. Brown, Mr. Brown, one of the parties to the deed, took the deed from Lane and kept it in his own possession.

V. The last question arising upon the case is upon the motion in arrest of judgment.

This we think the court will not for a moment entertain. If there was any defect in the declaration, it should have been taken advantage of by demurrer. By pleading to the action the defendant has waived any defect which there might be in the declaration, and any such defect is cured by verdict. *Anderson* v. *Read,* 2 Overt. 205 ; *Walpole* v. *Marlow,* 2 N. H. 386.

EASTMAN, J. The question which was found for the plaintiff, and upon which the verdict was rendered, was the delivery of the deed by Mrs. Brown, the defendant's husband, to Richard F. Fifield. If this deed was not delivered, the demandant was entitled to recover ; and the jury, under the rulings and instruc-

tions of the court, have found that it was not. Were these rulings and instructions correct?

The first exception taken was to the competency of a daughter of Peter Fifield as a witness. If the deed in controversy was not delivered, the property descended to the seven children of Peter Fifield, of whom the witness was one. The demandant held the title of two of the children, and the exception was that the witness was interested to have a co-tenant obtain possession, and was therefore incompetent. But the interest which she had was not in the result of this suit. The verdict and judgment could not be used either for or against her in any subsequent suit to which she might be a party. Her interest was in the question merely, and it was not therefore that legal interest which disqualifies a witness.

But even if she were incompetent, her testimony upon this question was entirely immaterial, and had no tendency to show either that the deed was or was not delivered. And a verdict will not be set aside for the admission of immaterial evidence, unless the court can see that it must have influenced the jury in their decision. *Hamblett* v. *Hamblett*, 6 N. H. 333; *Clement* v. *Brooks*, 13 N. H. 92; *Swamscott Machine Co.* v. *Walker*, 2 Foster 457.

The court, in summing up the evidence to the jury, called their attention to the fact that there was no appearance by the plaintiff when certain depositions were taken, and proceeded to make some comments in relation thereto. This course was excepted to as improper and illegal. We do not, however, think that the verdict can be set aside on account of these observations. The court laid down no rule of law to govern the jury; the competency of the evidence was not in question, and the court left it to the jury to say what weight should be given to it. It is not the ordinary practice in this State for the court to express opinions in regard to the weight of evidence; *Haven* v. *Richardson*, 5 N. H. 126; but it is not irregular for them to make such suggestions in relation to the facts as they may suppose will be useful to the jury, the matter being left to the jury

Cook *v*. Brown.

for decision. *Patterson* v. *Colebrook*, 9 Foster 94 ; *Flanders* v. *Colby*, 8 Foster 34 ; *Rollins* v. *Varney*, 2 Foster 99 ; *Commonwealth* v. *Child*, 10 Pick. 252 ; 3 Chitty's Practice 911.

The testimony of Harris as to what Susan Kimball had said relative to her deposition, was admissible. It falls within the principle of showing that a witness has given a different account of a transaction from that testified to. The testimony of Harris had also a tendency to show corruption as well as falsehood ; and it was not necessary for the plaintiff to have questioned the witness upon the subject before calling Harris. *Titus* v. *Ash*, 4 Foster 319 ; *Tucker* v. *Welch*, 17 Mass. 160 ; *Ware* v. *Ware*, 8 Greenl. 42.

The inventory of Mrs. Brown's estate returned by the defendant, including those premises, and sworn to by him, was competent. It was his statement under oath that the land was Mrs. Brown's, and consequently that it was not Fifield's, whose deed from Mrs. Brown he was attempting to establish. It was open to explanation, and the court did not object to the defendant's showing that it was done by the direction of the judge of probate. All that the court excluded was the opinion expressed by the judge of probate as to the title, and that was correctly excluded.

But were the instructions of the court correct in regard to the delivery of the deed ? This is the important question of the case. The court instructed the jury that if the deed was in the hands of the depositary, to be delivered to the grantee, either before or after the death of the grantor, without the grantor's reserving a control over it, then there was a good delivery. But if the grantor reserved such a full control over the deed during her life, and to the last moment of her life, there was no delivery. If she always had the right to control the destination of the deed, there was not a delivery, but if she at any time relinquished her right in favor of the grantee, there was a delivery ; that the question was, whether she always, until her death, continued to have the *right* to recall the deed, if she pleased, and not whether she did in fact recall it. The court were requested to

instruct the jury, that if the deed was to remain in the hands of the depositary during the life of the grantor, subject, however, during that time to be revoked by the grantor, and if not revoked then to be recorded, the deed might be regarded as the deed of the grantor from the time of the delivery to the depositary, if it was not subsequently revoked. These instructions the court declined to give, and gave those which we have stated. The point of difference between the two was this : The court held that in order to make the delivery good, it was essential that the grantor should part with her dominion over the deed. That the time when the grantee was to receive it was not material, whether at or before the decease of the grantor, but that the delivery to the depositary must be without the power of recall in the grantor ; while the defendant contended that if the deed was in fact delivered in pursuance of the directions of the grantor, it made no difference that the grantor had reserved the right of recalling the deed at any time.

In *Shed* v. *Shed & al.*, 3 N. H. 432, where A. made an instrument purporting to convey to his two sons, B. and C., certain tracts of land, with a reservation of the use of the land to himself during his life, and delivered the instrument to D. to be delivered to B. and C. as his deed, after his decease, in case he should not otherwise direct ; and A. died without giving any further directions — it was held, that the instrument was to be considered as the deed of A. from the first delivery, and that it might operate as a covenant by A. to stand seized of the land to his own use during life, remainder to B. and C. in fee. *Richardson*, C. J., in delivering the opinion says : " In the case now before us, the writing was intended to effect a mere voluntary disposition of the land ; and why the grantor might not reserve to himself a right to revoke the writing if he saw fit, does not readily occur to our minds. If he might legally deliver the writing absolutely, to take effect on his decease, we do not see why he might not deliver it conditionally, as an escrow, to take effect upon his decease, in case he did not change his mind and revoke it. Being the absolute owner of the estate, it seems to

us that he had an incontestible right to deliver the instrument, absolutely or conditionally, according to his will and pleasure."

The decision in that case would appear to be in point for the defendant, but we do not find any other case in our own Reports, and b .t one or two in others, which go to that extent. On the othe hand, there are many authorities which seem to us to establish a somewhat different rule.

In *Parker* v. *Dustin*, 2 Foster 424, a grantor executed a deed and delivered it to a third person, with instructions to deliver it to the grantee upon the grantor's death. He afterwards told the grantee that he had given him the land, and directed him to take possession of it, which the grantee did, and afterwards remained in possession; and it was held, that it was a question of fact for the jury, upon the evidence, whether the grantor deposited the deed with the third person, to be delivered at his decease, without reserving any control over it during his life; and that the deed should be considered as delivered or not, as the finding of the jury might be on the question of his intention. That is to say, if he intended to reserve a control over the deed, it was no delivery; but if he did not so intend, it was a delivery.

In *Doe* v. *Knight*, 5 Barn. & Cres. 671, the court told the jury that the question was for them to decide whether the delivery to the depositary was, under all the circumstances of the case, a departing with the possession of the deed and of the power and control over it for the benefit of the grantee, and to be delivered to him, either in the lifetime of the grantor or after his death; or whether it was delivered to the depositary, subject to the future control and disposition of the grantor. If for the latter purpose, they should find for the defendant. The point in that case was distinctly put; the defendant was seeking to defeat the deed, and the court held the validity of the deed to depend upon the question, whether the delivery to the depositary was or not subject to the future control of the grantor.

In *Commercial Bank* v. *Reckless*, 1 Halstead's Ch. 430, it was held that, to constitute the delivery of a deed, the grantor must

part, not only with the possession but with the control of it, and deprive himself of the right to recall it.

In *Baldwin* v. *Maultsby*, 5 Iredell 505, it was held that where there has been no delivery in the lifetime of the grantor, a delivery after his death, though at his request, is void.

In *Maynard* v. *Maynard*, 10 Mass. 456, the court, in speaking of the deed which was in controversy in that case, and of the grantor, say : " He probably chose to consider it as revocable at all times by himself, in case of any important change in his family or estate. Whatever may have been his views, however, he retained an authority over it." It is the retaining of the authority over it that shows the delivery to be incomplete. *Jackson* v. *Phipps*, 12 Johns. 421 ; *Jackson* v. *Dunlap*, 1 Johns. Cas. 114 ; 1 Devereux Eq. 14 ; C. W. Dudley's Eq. 14 ; *Hooper* v. *Ramsbottom*, 6 Taunton 12 ; *Habergham* v. *Vincent*, 2 Ves. Jr. 231.

All of these authorities differ essentially from that of *Shed* v. *Shed*, and it appears to us that they are founded upon sounder principles.

The delivery of a deed is either absolute or conditional ; absolute when it is to the grantee himself or to some person for him ; when the grantor parts with all control over it, and has no power to revoke or recall it ; conditional, when the delivery is to a third person, to be kept by him until some conditions are to be performed by the grantee. When the delivery is absolute, the estate passes at once to the grantee ; but when conditional, the estate remains in the grantor until the condition is performed and the deed delivered over to the grantee. Strictly speaking, a conditional deed is not a deed, but an *escrow*, a mere writing, the effect of which is to depend upon the performance of the conditions by the grantee. If they are performed it becomes a deed, otherwise it is a mere nullity. Co. Litt. 36 ; Cruise, title 32, ch. 2 ; 2 Black. Com. 307 ; 4 Kent's Com. 454 ; *Jackson* v. *Catlin*, 2 Johns. 248 ; *Carr* v. *Hoxie*, 5 Mason 60 ; Shep. Touch. 57, 58.

By fiction of law an *escrow* is sometimes made to take effect from the first delivery. The relation back to the first delivery,

however, is allowed only in cases of necessity, to avoid injury to the operation of the deed from events happening between the first and second delivery. 4 Kent's Com. 454; Perkins on Conveyancing, sec. 138; 3 Coke 30; 3 Black. Com. 43; *Frost* v. *Bechman,* 1 Johns. Ch. 297; 5 Co. 84, b.

A deed which is put into the hands of a third person, to be delivered to the grantee on the happening of some future event, but where no conditions are to be performed, is not an *escrow* or conditional deed. Its delivery is not dependent upon any condition to be performed, but it is a valid deed from the beginning, and the holder is but a trustee or agent for the grantee. In such a case the grantor has parted with all control over the deed. Perkins, secs. 143, 144; 6 Mod. 217; *Foster* v. *Mansfield,* 3 Met. 412; 4 Kent's Com. 455; *Stillwell* v. *Hubbard,* 20 Wendell 44.

But so long as a deed is within the control and subject to the authority of the grantor, there is no delivery. And whether in the hands of a third person or in the desk of the grantor, is immaterial, since in either case he can destroy it at his pleasure. To make the delivery good and effectual, the power of dominion over the deed must be parted with. Until then the instrument passes nothing; it is merely ambulatory, and gives no title. It is nothing more than a will defectively executed, and is void under the statute. Rev. Stat., chap. 156, sec. 6; *Habergham* v. *Vincent,* 2 Ves. Jr. 231; Powell on Dev. 13; 1 Rob. on Wills 59; 4 Bro. Ch. 353; Rob. on Frauds 337.

The case of *Habergham* v. *Vincent* was that of a deed, to take effect by way of appointment, after the death of the party. The subject was elaborately discussed and fully considered by the Chancellor and Justices Wilson and Buller. In the course of the discussion *Buller* says: " A deed must take place upon its execution or not at all. It is not necessary for a deed to convey an immediate interest in possession, but it must take place as passing that interest, to be conveyed at the execution, but a will is quite the reverse." And, after examining the various authorities upon the point, he adds: " These cases have

established that an instrument in any form, whether a deed poll or indenture, if the obvious purpose is not to take place till after the death of the person making it, shall operate as a will. The cases for that are both at law and in equity, and in one of them there were express words of immediate grant, and a consideration to support it as a grant; but as upon the whole the intention was that it should have a future operation after death, it was considered as a will." And the court all held, that the instrument then under consideration, though called a deed, though in form a deed, was in its nature testamentary, and being attested by only two witnesses, could not pass the freehold estate contrary to the provisions of the statute.

Again, delivery of a deed is as essential to pass an estate as the signing, and so long as the grantor retains the legal control of the instrument, the title cannot pass any more than if he had not signed the deed. A deed may be signed by a third person by virtue of a power-of-attorney, duly executed, and so may it be delivered to a third person, to be delivered to the grantee. But the authority in such cases must be executed during the life of the grantor, otherwise it " availeth nothing," for no man can create an authority which shall survive him. After his decease the right " is forthwith in the heir." Litt., sec. 66; Willes 105; Co. Litt. 52, b. There must be a time when the grantor parts with his dominion over the deed, else it can never have been delivered. So long as it is in the hands of a depositary, subject to be recalled by the grantor at any time, the grantee has no right to it, and can acquire none ; and if the grantor dies without parting with his control over the deed, it has not been delivered during his life, and after his decease no one can have the power to deliver it. The depositary must have had such a dominion over the deed during the lifetime of the grantor as the latter could not interfere with, in order to have any control over it after his decease.

We think the instructions of the court below were correct; and that if the grantor, until her death, reserved the right to recall the deed from the hands of the depositary, there was no delivery.

Cook v. Brown.

The law of the case is not changed by treating this instrument as a deed of bargain and sale, or by way of covenant to stand seized for uses, as contended by the defendant's counsel. The statute of uses, 27 Henry VIII., has been adopted in this State, and a freehold estate *in futuro* may be thus conveyed. *French* v. *French*, 3 N. H. 234 ; *Bell* v. *Scammon*, 15 N. H. 381. This instrument may perhaps be regarded either as a deed of bargain and sale, or as a covenant to stand seized for uses. A bargain and sale requires a pecuniary consideration. 4 Cruise 110 ; *Jackson* v. *Fiske*, 10 Johns. 456 ; and a conveyance to stand seized for uses requires the consideration of blood or marriage. 4 Cruise 120 ; 4 Kent's Com. 493 ; *Rex* v. *Scammonden*, 3 Term 474 ; *Underwood* v. *Campbell*, 14 N. H. 393. This instrument had expressed in it a small pecuniary consideration, and the evidence would seem also to show a sufficient relationship upon which to found a deed to stand seized for uses. But delivery is as essential to the valid operation of an instrument of this kind as to one conveying the estate immediately ; and the jury having found that this deed was never delivered, a verdict for the plaintiff followed as a necessary consequence.

If the owner of land desires to convey the same, but not to have his deed take effect until his decease, he can make a reservation of a life estate in the deed ; or it may be done by the absolute delivery of the deed to a third person, to be passed to the grantee upon the decease of the grantor ; the holder in such case being a trustee for the grantee. But if he wishes to retain the power of changing the disposition of the property at his pleasure, that can only be properly effected by will. So long as he retains the instrument, whether in the form of a deed or will, in his power, the property is his.

The motion in arrest of judgment cannot prevail. The count was sufficient after verdict.

The verdict having been returned for the plaintiff, and the rulings and instructions to which the defendant excepted having been sustained, it becomes unnecessary to consider the exceptions which were taken by the plaintiff, and there must be

*Judgment on the verdict.*