Cheshire
No. 7763

### Kenneth J. Arwe, Administrator w.w.a., Estate of Perley E. Swett

v.

### Quentin H. White & a.

December 30, 1977

*Goodnow, Arwe, Ayer, Prigge & Gardner,* of Keene (*Mr. Eric R. Gardner* orally), for the administrator.

*Blodgett & Makechnie,* of Peterborough (*Mr. Maurice M. Blodgett* orally), for Linda M. Tilton.

*Kendall W. Lane,* by brief, for Bernice Clark.

Quentin H. White and Sheila D. Swett and Priscilla A. Burkart filed no brief.

DOUGLAS, J.   This case arises from the request of Kenneth J. Arwe, administrator w.w.a. of the estate of Perley E. Swett, for instructions regarding the effect of an unrecorded deed unknowingly taken into the possession of one of the grantees during the decedent's lifetime. Two of the grantees, Quentin H. White and

Linda M. Tilton, were close personal friends of the decedent. The other two grantees were favorite relatives. The Master (*Charles T. Gallagher*, Esq.) ruled that the deed failed for want of "acceptance" during the decedent's lifetime. Linda M. Tilton, Sheila D. Swett and Priscilla A. Burkart excepted to this ruling. All exceptions were reserved and transferred by *King*, J.

Quentin H. White became acquainted with Perley Swett, the decedent, several years before his death. Swett, who was advanced in years, maintained a rather eccentric life style, living in an isolated area, three miles from his nearest neighbor, without any means of transportation and wholly dependent on friends and family for necessities of life. White was his principal helper; the two grew quite close. He took primary responsibility for bringing food, delivering mail, and watching over the old man's health and well-being. Gradually Swett came to rely on White for advice. Linda M. Tilton was a friend from her childhood. Although her family moved from the area and she saw the decedent infrequently thereafter, she maintained an active correspondence with him and visited him frequently in the hospital before his death.

The greater part of the decedent's assets consisted of the property on which he resided, which he called the "home place." It was received from his mother in 1925 and Swett had lived on it virtually all his life. The record indicates that Swett was preoccupied with its disposition in his later years. Yet, when he exhibited his will to White in 1970, the only mention of the property was:

> Unless changed, by me, disposition seems made of what
> is called the "home farm", and that seems to be around
> 369 acres. (all connected)

The will bears every indication of being drafted without professional advice. In response to White's inquiry about the absence of a bequest of the "home place," Swett produced a copy of a warranty deed, conveying to White, Tilton and two others each a one-quarter undivided interest in this property. The deed appeared unexecuted, but unknown to anyone save Swett and his attorneys, Swett had properly executed the original deed on June 3, 1969, and retained its possession. It was never recorded.

During the course of their relationship, White became interested in the decedent's writings, which were prolific. He intended to publish them with a description of Swett's life. Toward that

end, he asked for and received from the decedent, title to Swett's papers. He removed a few personally and received instructions that in the event of Swett's death or incapacity causing removal from the house, White was to gather and remove all other papers. Swett showed White a box filled with papers that was specifically to be removed and acted upon.

On June 20, 1973, the decedent suffered a stroke, which paralyzed his right side and rendered him unable to talk. White found him lying on the bed and called an ambulance. During the half-hour intervening before the ambulance arrived, Swett insistently gestured toward the table. The executed deed and the specifically designated box that had contained it were located among a large quantity of other papers. During his final months in the hospital and in a nursing home, Swett conducted one-sided conversations with White through nods and gestures to White's questions. Repeatedly, it became apparent that Swett wanted to discuss the deed. White removed all Swett's personal papers, including the deed, according to their prior arrangement, but though he made a brief search, he did not find the executed deed.

Swett died on September 1, 1973, and his will was proven on October 2, 1973. White resigned as executor a few months thereafter because of trouble with Swett's heirs. He entered into an agreement with them by which the heirs acknowledged his title to Swett's personal papers except deeds, and White relinquished all claims to Swett's real estate under any unrecorded deeds. White did not know of the executed deed until several months after the agreement when, on November 21, 1974, he discovered it. Four days later, White turned the deed over to the administrator. At no time before the decedent's death did any of the grantees have knowledge of the existence of the executed deed, although White had in fact taken possession of it before Swett's death.

■■■■ An executed deed validly conveys title only when it is "delivered" by the grantor with present intent to convey and is "accepted" by the grantee. *Newbury v. Parsons,* 103 N.H. 96, 97, 166 A.2d 231, 232 (1960). Ordinarily execution and delivery occur at the same time or within a short time of each other as part of a single transaction. In such an instance, we speak of intent as being ascertained at the time of execution. *Hammer v. Ray,* 116 N.H. 90, 92, 352 A.2d 734, 736 (1976). However, such a statement is merely a corollary of the general rule that anything clearly manifesting the grantor's intent that his deed become operative, by words,

acts and the surrounding circumstances, is sufficient to support a finding of legal delivery. *Lintner Estate v. Meier,* 344 Mich. 119, 123, 73 N.W.2d 205, 207 (1955); 4 H. Tiffany, The Law of Real Property § 1034, at 361 (3d ed. 1975).

■ In the typical transaction, the time of execution would be the event at which such an intent would form. Swett had no intent that the conveyance be effective at the time he executed the deed. But when the grantor intends a lapse of time to separate execution and delivery, the proper time to ascertain intent is at delivery, *Howell v. Mays,* 107 Cal. App. 751, 755, 290 P. 898, 900 (1930); *see Oberholtz v. Oberholtz,* 79 Ohio App. 540, 544, 74 N.E.2d 574, 577–78 (1947), when the intent that the deed become effective matures. In this case, we look to the time of delivery. *Cf.* 8 G. Thompson, Commentaries on the Modern Law of Real Property § 4225, at 3 (1963) ("delivery" part of "execution").

■ Although the determination whether an executed deed has been properly delivered is ordinarily a question of fact, *Newbury v. Parsons,* 103 N.H. at 97, 166 A.2d at 232, on occasion, it becomes a mixed question of fact and law. *Hurlburt v. Wheeler,* 40 N.H. 73, 76 (1860); 23 Am. Jur. 2d *Deeds* § 88 (1965). Whether the facts, once ascertained, constitute delivery is always a question of law. *Reed v. Keatley,* 187 Kan. 273, 278, 356 P.2d 1004, 1008 (1960); *Bove's Estate v. Bove,* 116 Vt. 76, 86, 70 A.2d 562, 568 (1950); 8 G. Thompson, *supra* § 4228, at 39. The same categorization applies to acceptance. 8 G. Thompson, *id.*

■ The facts allegedly constituting delivery are not in dispute. It might have occurred as early as the original gift of the papers, the removal of some of the papers under a valid claim of right being constructive delivery as to the remainder, including the deed. *Cf. Marsh v. Fuller,* 18 N.H. 360, 362 (1846); *Sullivan v. Hudgins,* 303 Mass. 442, 447–48, 22 N.E.2d 43, 46 (1939). Because the law no longer always demands actual physical transfer of the deed if the grantor intends that the instrument be legally operative, *Reed v. Reed,* 261 Ore. 281, 283, 493 P.2d 728, 729 (1972) (" 'delivery is effected by a mental, not a physical process' "); *Rich v. Wry,* 110 Vt. 307, 311, 6 A.2d 7, 8 (1939); 8 G. Thompson, *supra* § 4225, & at 2 n.4; 4 H. Tiffany, *supra* § 1034, Swett's gestures while waiting for the ambulance and his one-sided conversations in the hospital could be found to have been good delivery. In any event, White

acquired actual physical possession of the deed when he removed Swett's papers after the stroke.

Although mere physical possession of the deed by a grantee does not in itself constitute a delivery, *Bove's Estate v. Bove*, 116 Vt. at 86, 70 A.2d at 568; 8 G. Thompson, *supra* § 4234, at 70, Swett's repeated gestures toward the table while waiting for the ambulance and his constant attempts to discuss the deed while in the hospital evince his knowledge that the deed was on the table and that he wanted White to take possession of it. In the absence of evidence to the contrary, a valid delivery to one of several co-grantees serves as a delivery to the remainder. *Klouda v. Pechousek*, 414 Ill. 75, 81, 110 N.E.2d 258, 262 (1953); *Schmidt v. Jennings*, 359 Mich. 376, 378, 102 N.W.2d 589, 593 (1960); 4 H. Tiffany, *supra* § 1034, at 361.

The master's findings are not to the contrary as to delivery. His report voids the deed for lack of acceptance during the decedent's lifetime. The authorities are split over whether acceptance is an integral part of delivery, as the administrator claims, *Fitzpatrik v. Layne*, 291 Ky. 523, 531, 165 S.W.2d 13, 18 (1942); *Hawkes v. Pike*, 105 Mass. 560, 563 (1870) (semble); 23 Am. Jur. 2d *supra* § 127, at 176, or whether it is a component of conveyancing independent of delivery, 4 H. Tiffany, *supra* § 1061; *see Martin v. Adams*, 216 Miss. 270, 277, 62 So. 2d 328, 329 (1953); *Smith v. Black*, 143 Neb. 244, 250–52, 9 N.W.2d 193, 197–98 (1943). *See generally* 8 G. Thompson *supra* § 4251, at 164–65.

Our cases treat this matter inconsistently. *Compare Newbury v. Parsons*, 103 N.H. at 97, 166 A.2d at 232 (deed must be delivered and accepted), *and Corbett v. Norcross*, 35 N.H. 99, 110 (1857) (grant not accepted), *with Cook v. Lee*, 72 N.H. 569, 572, 58 A. 511, 513 (1904) (delivery is possession and acceptance by donee), *and Bank v. Webster*, 44 N.H. 264, 268 (1862) (delivery incomplete for want of acceptance). We believe that this split is mostly over semantics. Those who consider acceptance as part of delivery, view "delivery" as a legal term of art. The other school ascribes no independent legal operative significance to any one word. Viewing the matter practically, a transfer of possession of the deed with intent to convey occurs first chronologically, though often virtually simultaneously, with an expression of willingness by the grantee. We believe that the master, in citing *Newbury*, also viewed this matter practically and did not find that physical transfer with

intent to convey failed, but that the expression of willingness to accept did not occur. We turn then to the matter of acceptance.

■ "Delivery is the act of the grantor, acceptance the act of the grantee. An express acceptance is not demanded." 8 G. Thompson, *supra* § 4252, at 166. Acceptance may be shown by the acts and conduct of the grantees. *Id.* "Acceptance of a deed by a grantee may be subsequent to the death of the grantor," *Id.* at 171; *accord, Yaple v. Morris,* 194 Kan. 149, 154, 398 P.2d 320, 324 (1965). Were the law otherwise, a grantor's handing of a deed to a third person to be delivered after the grantor's death, but with full intent to divest himself presently of all control over the property, could not be recognized. Yet such arrangements are common. *See* 8 G. Thompson, *supra* § 4232, at 50–52 & n.84; 26 C.J.S. *Deeds* § 46 (1956).

■ We recognized the legal efficacy of such an arrangement in *Cook v. Brown,* 34 N.H. 460 (1857). The grantee in *Cook* apparently had no knowledge of the deed, given to a third person for delivery after the grantor's death. The deed failed only because the grantor reserved a right to recall the deed, thus not relinquishing control. Indeed, the grantee's knowledge is wholly immaterial, since even if he knew of the deed, he could not accept it until it was first tendered to him, *Union Mut. Life Ins. Co. v. Campbell,* 95 Ill. 267, 286–87 (1880); *Kirby v. Hulette,* 174 Ky. 257, 267, 192 S.W. 63, 68 (1917); Annot., 74 A.L.R.2d 995, 996 (1960), which in all these arrangements occurs after the grantor's death. The deed is valid when the inter vivos transfer to the third person constitutes legal delivery, the expectations of the heirs notwithstanding.

■ The principal difference between *Cook* and this case is that the grantor delivered the deed to one of the grantees, not to a third person. But this distinction will not support a different holding. The importance of the delivery to a third person lies in the necessity of demonstrating the grantor's intent to relinquish control over the property. If he does not want the grantee to receive the deed before death, he must give the deed to someone else, or risk the inference that the deed was not delivered at all. *See Vreeland v. Vreeland,* 48 N.J. Eq. 56, 59–67, 21 A. 627, 629–31 (1891). Delivery to the grantee serves this evidentiary function equally well, and when the grantee has no knowledge of the deed, even though he received it, no basis exists to deny him the benefits of the deed because he has delayed his acceptance.

The facts of this case are akin to those of *Dale v. Lincoln*, 62 Ill. 22 (1871). In *Dale*, the grantor executed a deed to his wife and had it recorded. It was to take effect if he were killed while in the army. The wife knew of her husband's intentions, but did not know if he had perfected them. She only discovered the deed after her husband's death while going through his papers. She administered the property and received the rents from it. The Illinois Supreme Court found that by her actions she had in fact accepted. *Id.* at 25. We believe that the grantees' actions here in pursuing this claim, although different, are of a character that evince actual acceptance. Finally, White's rejection of his share of the property has no effect on the liability of the other grantees to take under the deed. Each grantee can accept for himself, *Allen v. Allen*, 115 Utah 303, 309, 204 P.2d 458, 461 (1949), even though delivery is made to only one, *Smith v. Smith*, 289 Mo. 405, 419–20, 233 S.W. 183, 186 (1921). Hence all requisite indicia of a valid conveyance are present and the deed effectively conveyed property interests to grantees Tilton, Swett, and Burkart.

Remaining is only the apportionment of the property. The deed conveys to each of the grantees a one-quarter undivided interest. Because the deed does not specify an intent to create a right of survivorship, the grantees hold the property as tenants in common. RSA 477: 18; *accord In re Allaire Estate*, 103 N.H. 318, 320, 171 A.2d 191, 192 (1961). Quentin White rejected his share; the title to that one-quarter undivided interest reinvested in the grantor. 8 G. Thompson, *supra* § 4251, at 165.

*Exception sustained; remanded.*

All concurred.