**In re J. Peter GOSSELIN, Debtor.**

**Bankruptcy No. 90–10293.**

United States Bankruptcy Court,
D. New Hampshire.

Feb. 21, 1992.

Victor Dahar, Manchester, N.H., Chapter 7 Trustee.

K. William Clauson, Clauson, Smith & Whelan, Hanover, N.H., for Carl Wallin and Bonnie Wallin.

Jerome Meyers, White River Junction, Vt., for J. Peter Gosselin.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This matter came before the Court on motion by Carl and Bonnie Wallin, as secured claimants, for an order authorizing the release and distribution of $50,000 held in escrow by the chapter 7 trustee and his objection thereto. The movants claim security in assets of the debtor as a result of what they claim was their valid pre-judgment attachment of debtor's undivided one-half interest in his marital residence. They argue debtor's transfer of his interest failed for lack of delivery of the recorded deed to his then wife and acceptance of the same by her prior to the effective date of the attachment. Alternatively, they argue that the conveyance was fraudulent under N.H.Rev.Stat.Ann. Chapter 545–A (Supp. 1990).

The chapter 7 trustee objects, arguing that the debtor made a valid pre-attachment transfer of his interest in the real estate leaving nothing to attach. The trustee argues the transfer was not fraudulent and looks to distribute the $50,000 pro rata to all of debtor's unsecured creditors including the movants.

Other than the debtor's intent at the time of the transfer, the facts relevant to resolution of this matter are undisputed and the Court makes findings as follows:

1. By Writ dated March 5, 1986, Carl and Bonnie Wallin, (hereinafter the "movants") sued J. Peter Gosselin (hereinafter the "debtor") for breach of a home improvement construction contract. They petitioned the Grafton County Superior Court to grant them permission to attach his real estate. The Writ of Summons with petition to attach lapsed without service.

2. Subsequently, and allegedly aware of the attempted attachment, the debtor transferred his one-half undivided interest in the marital residence held in the entireties to full ownership in his wife by warranty deed dated April 3, 1986, and recorded on April 7, 1986. Without attempting to answer the question of whether the debtor was "fully aware" of the first attempted attachment, which lapsed for want of service, the timing pattern of the facts in this case indicate the debtor was "aware" of the impending suit. Given the attempted attachment and subsequent transfer less than a month later, it would appear to this Court that the threat of the movants' state

court contract action was the precipitating cause of the transfer.

3. A subsequent Writ of Summons and petition to attach debtor's interest in the marital residence was granted and the attachment in the amount of $40,000 was issued May 21, 1986. The attachment was recorded on July 2, 1986.

4. The debtor and his wife were divorced in September of 1988. A permanent stipulation dated September 16, 1988 was approved as a final decree of divorce on September 22, 1988. By the terms of the decree, debtor's ex-wife was awarded their marital residence free and clear of any interest of the debtor but subject to outstanding bank mortgages and movants' $40,000 attachment. As part of the divorce settlement, debtor's ex-wife agreed to pay the debtor $65,000 on or before September 15, 1990, or upon the sale of the residence, whichever occurred first. The debtor was also ordered to indemnify and hold harmless his ex-wife from any claim arising out of the state court litigation between the movants and debtor and it was also ordered that upon the ex-wife's payment of the $65,000, the movants' attachment would be released.

5. On October 20, 1988, judgment was entered in favor of the movants in the breach of contract action. On November 22, 1988, the judgment was amended to the amount of $38,949.

6. On February 3, 1989, the state court granted movants permission to make an additional $20,000 attachment on the debtor's remaining interest in the real estate and also trustee process against the proceeds of the divorce settlement.

7. On November 10, 1989, movants commenced a second action in state court to set aside the transfer by debtor to his then wife as a fraudulent conveyance pursuant to N.H.Rev.Stat.Ann. Chapter 545–A.

8. On March 20, 1990, the debtor filed a chapter 7 bankruptcy petition in this Court. At the time of the bankruptcy filing, the movants claimed the debtor owed some $54,528 in judgment and interest from the date of the first attachment.

9. The divorce settlement was subsequently compromised by agreement between the trustee, movants and debtor's ex-wife from $65,000 to $50,000.

10. The movants released their attachments and signed a "Stipulation For Docket Markings" with debtor's ex-wife in the state court fraudulent conveyance action. The stipulation recited that: "Judgement for the Plaintiff has been satisfied in full by the defendant's payment in the United States Bankruptcy Court in the bankruptcy of J. Peter Gosselin."

11. In an affidavit introduced during the hearing on the motion, debtor's ex-wife swore that she did not know of the 1986 conveyance from the debtor until the time of the divorce negotiations in 1988. Accordingly, it is clear that there was no explicit, knowing acceptance of the conveyance by the then-wife as of the July 2, 1986 effective date of the attachment which is the subject of this litigation.

## DISCUSSION

### A. Delivery

■ "The question of whether a deed is delivered is generally one of fact to be ascertained from the intent of the parties at the time of execution. Thus in order to effectively transfer property to another there must be an intention on the part of the grantor to convey together with delivery of the deed and acceptance by the grantee." *Newbury v. Parsons*, 103 N.H. 96, 97, 166 A.2d 231 (1960) (citations omitted). "Although the determination whether an executed deed has been properly delivered is ordinarily a question of fact, on occasion, it becomes a mixed question of fact and law. Whether the facts, once ascertained constitute delivery is always a question of law." *Arwe v. White*, 117 N.H. 1025, 1029, 381 A.2d 737 (1977) (citations omitted). "[I]n the absence of other evidence, delivery may not be presumed because [a deed] was recorded." *Fisher v. Koper*, 127 N.H. 330, 335, 499 A.2d 1001 (1985) (quoting *Newbury v. Parsons*, 103 N.H. at 98, 166 A.2d 231). "Although actual manual delivery is not established, delivery may be inferred from all the surrounding circumstances such as signing, attestation, acknowledgement and recording but this evidence is prima facie only and not conclusive." *Newbury v. Parsons*, 103

N.H. at 98, 166 A.2d 231 (citing *Wells v. Iron Company,* 48 N.H. 491, 537 (1869)).

The *Arwe* opinion notes a general rule of conveyancing that "anything clearly manifesting the grantor's intent that his deed become operative, by words, acts and the surrounding circumstances, is sufficient to support a finding of legal delivery." *Arwe* quoting *Lintner Estate v. Meier,* 344 Mich. 119, 123, 73 N.W.2d 205 (1955). "The law no longer actually demands actual physical transfer of the deed if the grantor intends that the instrument be legally operative." *Arwe,* 117 N.H. 1025, 1029, 381 A.2d 737 citing *Reed v. Reed,* 261 Or. 281, 493 P.2d 728 (1972). While mere physical possession of a deed by a grantee does not in itself constitute delivery, when taken together with all surrounding circumstances, it may well arise to legal delivery. *Arwe,* 117 N.H. at 1030, 381 A.2d 737.

"The authorities are split over whether acceptance is an integral part of delivery ... or whether it is a component of conveyancing independent of delivery...." *Arwe* at 1030, 381 A.2d 737. (citations omitted). *Compare Boody v. Davis,* 20 N.H. 140 (1849) ("There has been a regular delivery of the deed by the tenant to the recording officer, with the intent that it should pass to the grantees, and should in fact enure for their benefit. Their assent to it, which is a legal presumption at that moment, has been established as a fact by their subsequent acts that have been adverted to.") *with Haynes v. Davis,* 18 N.H. 600 (1847) ("Delivering a deed to the register to be recorded, may be with the intention of still holding the deed under control,... It is evidence from which a jury, on consideration of all the circumstances, may find a delivery or not, according as they find the intention of the party.")

In *Arwe* the Supreme Court of New Hampshire expressed its view that the split among the cases treating the matter of legal delivery inconsistently was "mostly over semantics." *Id.* As stated by the New Hampshire Supreme Court:

> Those who consider acceptance as part of delivery, view 'delivery' as a legal term of art. The other school describes no independent legal operative signifi-

cance to any one word. Viewing the matter practically, a transfer of possession of the deed with intent to convey occurs first chronologically, though often virtually simultaneously with an expression of willingness by the grantee. We believe that the master, in citing *Newbury,* also viewed this matter practically and did not find that the physical transfer with intent to convey failed, but that the expression of willingness to accept did not occur.

*Arwe* at 1030–31, 381 A.2d 737.

*Newbury v. Parsons,* 103 N.H. 96, 166 A.2d 231 (1960) and *Arwe v. White,* 117 N.H. 1025, 381 A.2d 737 (1977) are the two more "modern" decisions bearing on this Court's analysis of the dispute. In *Newbury* a husband transferred an interest in property he owned to his wife as a joint tenant. The deed was recorded by the husband's bank and placed with his other personal papers. His wife never saw the deed nor did she give any consideration for it. She was aware that her husband did intend to make such a transfer but to take effect only on his death. Creditors of the wife made a real estate attachment on any real property in which she had any right, title, or estate in order to satisfy any future judgment.

The trial court found there was no intention by the husband of making a present gift to her, that there was no delivery of the deed with the requisite intent, and that she therefore acquired no present interest in the property which the plaintiff could reach through its real estate attachment. *Newbury* at 97, 166 A.2d 231. This disposition rendered moot any issue as to her acceptance of the actual deed. The trial court relied on testimony by the husband that he intended the transfer to placate his wife who was mentally unstable, pregnant, and concerned about her security in the event of his death. The New Hampshire Supreme Court affirmed the trial court's finding on the basis of the husband's testimony.

This matter is somewhat similar to *Newbury* except for the absence of any testimony by the debtor as to his intent in transferring his interest to his wife. The present case also squarely presents the ac-

ceptance issue. There seems little controversy that the debtor intended at least conditionally to effect a conveyance to his wife but the fact that it did not tell her about it could support an inference that he intended to "straddle" and preserve his options depending on the outcome of his problems with movants and perhaps other parties. In the absence of his own testimony, subject to cross-examination, the court is left with that conditional inference.

He did memorialize his intent by recording the deed and placing it with other family papers. By recording the deed he made it impossible to reverse the transaction without alerting his wife to the transfer but again the failure to disclose the deed to his wife raises a question as to whether he believed he could easily get her to reverse the transaction once the danger had passed. There is no indication that there were any marital problems in 1986.

In *Arwe*, the grantee unknowingly possessed the grantor's unrecorded deed. Like *Arwe*, the wife in this matter arguably had constructive possession of the deed in the family drawer, although she too had no knowledge of it. The administrator of the decedent's estate in *Arwe* requested a Master's instructions regarding the effect of the unrecorded deed unknowingly in the possession of one of the grantee's during the decedent's lifetime. The Master ruled the deed failed for want of acceptance. *Arwe* at 1027, 381 A.2d 737. In overturning the Master's ruling, the New Hampshire Supreme Court reasoned that delivery to the grantee, albeit unknown to the grantee, served the "evidentiary function equally well, and when the grantee has no knowledge of the deed even though he received it, no basis exists to deny him the benefits of the deed because he has delayed his acceptance ... We believe that the grantee's actions here in pursuing this claim, although different, are of a character that evidence actual acceptance." *Arwe* at 1031–32, 381 A.2d 737.

Like *Arwe*, it is arguable that debtor's ex-wife knowingly accepted the conveyance by her subsequent actions in the 1988 divorce proceeding giving her ex-husband the note and second mortgage on the residence which is the center of this dispute. *Boody v. Davis*, 20 N.H. 140 (1849); *Arwe* at 1032, 381 A.2d 737. On the other hand, the trustee has cited no authority that such acceptance "relates back" to the time of the 1986 transfer to defeat the movants' attachment, especially when the attachment was an intervening event between the debtor's transfer and his ex-wife's acceptance.

*Arwe* upheld a transfer without recordation, knowledge, or acceptance as legal delivery in the context of disposition of property by a decedent with no intervening claims by creditors. *Newbury* on the other hand involved intervening claims by creditors but the acceptance question was mooted by virtue of the clear record establishing that there was no delivery of the deed in question with a present intention to transfer the property.

On balance, I conclude that the New Hampshire Supreme Court would not consider the *Arwe* decision as a binding precedent in a case which *did* involve intervening claims by creditors prior to effective acceptance of the transfer in question. The Court in *Arwe* essentially treats the situation of executed deeds found in the papers of decedents as being *sui generis.* The Court notes with regard to deeds held by third persons to be delivered after a grantor's death that "such arrangements are common" and that if acceptance could not relate back the common practice could not be recognized. *Arwe* at 1030, 381 A.2d 737.

■ There is no common practice, recognized by the law as beneficial, whereby a husband may make an undisclosed transfer of property to his wife in the shadow of impending creditor collection action and still have the wife's subsequent acceptance of the deed deemed to relate back to defeat intervening claims by creditors. On the contrary, if a debtor intends to transfer property effective against his creditors a debtor in that situation should make formal *disclosed* delivery of the deed to the grantee and have the grantee evidence acceptance by taking sole possession and control of the deed of transfer.

I conclude under the applicable law that the New Hampshire courts would not per-

mit use of the "relation-back" theory of acceptance in these circumstances to defeat intervening vested rights of creditors in the grantor's property. It would have been quite simple for the husband in this case to have disclosed the transfer to his wife and given her formal delivery of the deed to eliminate any question about the present effectiveness of the transfer. Not having done so, it little behooves the debtor (or here the trustee standing in his shoes) to leave to speculation the reasons for not having done so.

This disposition of the matter renders unnecessary any decision with regard to the alternative contention by the movants that the transfer to the wife was a fraudulent transfer under N.H.Rev.Stat.Ann. Chapter 545–A. Any rights that the movants may have had in that regard arguably were superseded by the chapter 7 trustee and his avoiding powers under the Bankruptcy Code, which incorporate any state law avoiding powers for the benefit of all creditors. That question is rendered moot in the present case, however, in view of the finding and conclusion in this decision that the property conveyed, even if ordered returned to this estate, would still be subject to the movants' secured claim.

The parties shall settle upon a form of final order in favor of the movants in accordance with this opinion. Movants shall submit the same within ten days from date hereof.