Corbett v. Norcross.

## CORBETT v. NORCROSS & al.

An individual cannot be made the grantee of land without his consent, and a refusal to accept a grant may be shown by parol evidence.

The wife of a grantor is not a competent witness to attest his deed.

The proprietors of common and undivided lands may divide the same among themselves by metes and bounds, and lots and ranges. They may make partition either by a vote or deed, or they may convey their undivided interests without partition.

If a party is present and sees another sell and convey property, whether real or personal, to which he may assert a title, without disclosing his title, or objecting to the sale or conveyance, and the sale is made with a full knowledge on his part, he will be estopped by his silence from thereafter setting up his title against the purchaser. And this principle may be carried out at common law without resort to equity.

Estoppels are binding upon parties and privies; privies in blood, privies in estate, and privies in law.

The proprietors of a common and undivided tract of land attempted to make partition of the same by lots and ranges, but failed to do it legally. Each of them afterwards made conveyances by lots and ranges, according to the partition, but subsequently conveyed the tract to others by giving deeds of their undivided interests. — Held, that those claiming under the deeds conveying the undivided interests, were estopped from denying the partition as against those who held title under the deeds conveying by lots and ranges.

A plan was made of a tract of land, of which the corners were given, dividing the tract into ranges and lots, but the lots were not laid off upon the ground. Conveyances were made by ranges and lots, according to the plan. — Held, that, the corners of the tract being given, the lots could be run out according to the plan, and that the deeds were not void for uncertainty.

WRIT OF ENTRY, in which the demandant claims a tract of land containing sixty thousand acres, called Elkins' Grant:

bounded, beginning at the northeast corner of the town of Lincoln, and running east seven miles and one hundred and seventeen rods, to Hart's Location ; then southerly by the westerly boundary of said Location, to a point so far south that a line drawn thence due south shall strike the northwest corner of the town of Burton ; thence south to said northwest corner of Burton ; thence westerly, along the northern line of Waterville, to the eastern boundary of Hatch & Cleaves' Grant ; thence northerly and westerly by said Grant to the east line of Thornton ; thence northerly by the line of Thornton to the line of Lincoln, and along this line to the first point mentioned.

The tenants pleaded *nul disseizin.*

To sustain his suit the demandant introduced the following among other evidence :

A deed from Joseph Robbins to the demandant, dated February 17, 1848, of sundry lots, describing them, in a tract of land granted by the State to Jasper Elkins and others, July 3, 1830.   Also, a deed from said Robbins to the demandant, dated January 16, 1845, conveying, with the usual covenants of warranty, three other lots, describing them, in the same tract.

He then introduced copies of six deeds from Jasper Elkins and Jacob Sargent to Joseph Robbins, all dated in January and May, 1831, conveying a number of the lots described in the preceding deeds.   Also, copies of three deeds from Ebenezer P. Elkins to Joseph Robbins, dated in May and November, 1831, conveying sundry of the lots specified in the deeds from Robbins to the demandant.

Two or three of these deeds to Robbins, after describing the lots, stated that they were numbered on a plan of lots and ranges, registered in the common registry of the county, and also in the office of the Secretary of State ; but no such plan was produced on the trial.

The demandant also introduced a copy of a deed from Lambert Hastings to Robbins, dated October 24, 1834, conveying to him lots conveyed by R. M. N. Smyth to Hastings.   Also, Smyth's deed to Hastings, dated January 9, 1832, conveying those lots.

Also, the deed of Jasper Elkins and Sargent to Smyth, dated January 28, 1831, conveying the same lots. Also, deed of Samuel H. Walker to Smyth, dated August 23, 1830, conveying with warranty one sixth of the Elkins Grant. Also, deed, Samuel H. Walker to Smyth, dated January 30, 1832, conveying thirty-nine lots in the grant, numbered on the plan.

The demandant also introduced a copy of a deed, John Eaton to Jacob Sargent and Enoch Flanders, dated December 25, 1830, conveying one sixth part of the grant, except the second lot in the second range on East Branch.

Also, a copy of a deed from the Treasurer of the State, for the consideration of $800, to Jasper Elkins, Samuel H. Walker, Jacob Sargent, Jr., Ebenezer P. Elkins, John Eaton and David Perkins, dated August 31, 1830, conveying the same tract described in the writ. Also, a copy of the resolution authorizing the Treasurer to make the conveyance, agreeably to a survey and appraisal to be made by Jonathan Cummings.

The demandant introduced evidence tending to show that some surveys were made by Cummings of the grant, from which he drew a plan purporting to divide the tract into ranges and lots, and that this plan and a copy of the same were afterwards used in marking off lots to the several proprietors, and in making sales of the same. The lots were calculated to contain two hundred acres each.

In order to prove a partition of the grant among the proprietors, the demandant introduced evidence tending to show, that, soon after obtaining the deed from the State, the grantees in the deed, with the exception of Perkins, (who never attended any meeting with them,) held a meeting in Thornton, at which a moderator and clerk were chosen, and some steps taken in making a division.

That afterwards a meeting was held on the 27th of January, 1831, which was called by an advertisement in a Boston newspaper, at which a majority of the proprietors were present. That a moderator and clerk were chosen; that they voted to make a division by lot, and made a ticket for every lot, and

Corbett *v.* Norcross.

placed them in a hat; that the tickets were drawn out, first one for Sargent, then one for Smyth, and so on; that in this way all the lots were drawn out; Sargent, who was clerk, making a minute of the same as the drawing proceeded; that they then put upon the lots on the plan the name of the proprietor to whom each was drawn; and this plan was afterwards used and carried upon the ground to show people the lots. Smyth, at this meeting, wished a quitclaim deed of his lots, saying that he would quitclaim to others, and this was finally agreed upon; and Jasper Elkins and Sargent, who were present, accordingly gave to Smyth a deed on that day. Ebenezer P. Elkins and Flanders were not present at this meeting. Smyth also quitclaimed at this time. Jasper Elkins assumed to act for Ebenezer P. Elkins and Flanders at this meeting, and they did not appear to have subsequently disclaimed his acts.

The legality of this meeting was excepted to upon various grounds: Because it was not called agreeably to the requisitions of the statute; because no requisite notice was given; because the meeting was held in Boston instead of New-Hampshire; because no sufficient records were kept; and because all the proprietors were not present.

The demandant, in addition to the deeds already in evidence, introduced others from the two Elkinses, Flanders, Sargent and Smyth, to different individuals, each of them making conveyances by lots and ranges of different lots in the tract. These latter deeds bore dates subsequent to January 27, 1831, and prior to July, 1837.

The demandant further introduced evidence showing that Sargent, Flanders and the two Elkinses agreed together to make sales of a portion of their shares and to divide the proceeds; that sales were made accordingly at several times for goods and money, and a division made; that they sold and received about $1000 worth at one place, and $800 in another; and that in making these sales each one sold from the lots marked with his name on the plan.

Four witnesses were introduced by the demandant in relation

to the interest of David Perkins in the grant. Their testimony tended to show that Perkins never had anything to do with the matter except to consent that his name might be used upon the petition to the State for the grant, provided he was not to be called upon to pay for the land.

The tenants introduced the following evidence of title: A deed from Samuel H. Walker to themselves, dated June 21, 1844, conveying four undivided sixths of the grant. Also, several deeds from the Elkinses and Flanders, conveying undivided interests in the grant to Walker. Likewise the deed of Noah W. Perkins, son of David Perkins, to Walker, conveying one undivided sixth of the grant; and the will of David Perkins, giving to his son, Noah W., one half his farm and all the rest of his real estate. These deeds to Walker were all dated in 1843 and 1844.

The tenants also introduced the deed of Walker to them, dated July 3, 1844, conveying all the interest he acquired by the deed of William C. Thompson; and then the deed of Thompson to Walker, dated July 2, 1844, conveying all the interest he acquired by deed of Jacob Sargent to him; and then the deed of Sargent to Thompson, dated June 10, 1841, conveying all his interest in all lands in Grafton County, including Elkins' Grant.

The tenants also introduced a deed from Jasper Elkins to Ebenezer P. Elkins, dated November 31, 1830, and recorded February 7, 1832, conveying one undivided third part of the grant. One of the witnesses to this deed was Jane Elkins, wife of Jasper Elkins, the grantor. There was considerable evidence in regard to the manner in which the name was placed upon the deed. She testified that she did not sign the deed herself, and never saw it until it was presented in court; and it appeared that Ebenezer P. Elkins, the grantee, signed her name to the deed. The evidence in regard to this deed also showed that it was without consideration, and made for the purpose of enabling the grantee to effect sales of the lands, and that it was by mistake that it was not returned to the grantor.

The tenants also introduced a deed from Joseph Robbins to

Corbett *v.* Norcross.

Ebenezer P. Elkins, dated March 31, 1832, conveying sundry lots in the tract, but none of them were the lots conveyed by Robbins to the demandant.

There was also evidence tending to show that the lots originally conveyed to Robbins were put into his hands for the purpose of being sold by him for the proprietors; but the evidence also tended to show that the business was all settled up between him and those of the proprietors who placed lots in his hands for sale, and that he paid them for such lots as he did not re-convey to them.

The tenants also introduced a copy of a judgment recovered by the State in 1841, against the Elkinses, Walker, Flanders and Eaton, for a balance due on the bond given by them for the grant, being the sum of $728 debt, and $14.79 cost, which was paid by Walker. And the tenants offered evidence tending to show that the consideration of the deeds from the Elkinses and Perkins and Flanders to Walker was in the main, that he discharged them from all claim by reason of having paid said judgment.

After closing the testimony, the parties made the following agreement in writing:

" The court may assume, for the purpose of stating the case, in order to raise and determine the questions of law, and not for any other purpose or to any greater extent, that at the meeting in Boston, January 27, 1831, the lots specified in the deed from Samuel H. Walker to R. M. N. Smyth, of June 30, 1832, were set off from the rest, and that there was no setting off of lots beyond that."

" All the evidence in the case to be stated and considered, so far as it may tend to establish any other position, except that of setting off of lots was had in 1831, in a manner other than that above mentioned."

" A verdict to be taken for the tenants, subject to the opinion of the Superior Court upon the case so drawn, and to be set aside and a verdict entered for the demandant, if in the opinion of the court he shall be entitled to recover any part of the demanded premises."

" If in the opinion of the court it shall be necessary or expedient, a trial may be ordered for the purpose of determining any fact material for determining the rights of the parties."

A verdict was therefore taken by consent for the tenants.

The foregoing is but an abstract of the case, as it came from the Common Pleas — the case and amendments embracing some thirty printed pages, and the parties being at liberty to refer to the numerous deeds, and other papers used upon the trial, as well as to the depositions. It is believed, however, that what has been stated, taken in connection with what facts appear in the opinion of the court, will be sufficient for an intelligent understanding of the decision.

*Lyford,* (with whom was *Bell,*) for the plaintiff.

I. The demandant has shown a clear title to the lots mentioned in the case, if the tract of land was so divided that the tenants are estopped to deny a partition.

II. The tenants are estopped by the acts of their grantors from denying the division of the tract among the original grantees. *White* v. *Patten,* 24 Pick. 324 ; Co. Lit. 352, a; 13 N. H. 389 ; 16 Johns. 110 ; *Hamlin* v. *Bank of Cumberland,* 19 Maine 66 ; 20 Maine 260 ; 13 do. 281.

III. Flanders is not at liberty to deny partition, after consenting to sales of divided lots, and participating in the profits arising from the sales. *Watkins et al.* v. *Peck,* 13 N. H. 360 ; *Hatch* v. *Kimball,* 16 Maine 145 ; 7 Foster 503 ; 12 N. H. 133 ; 16 Maine 145 ; 2 Sumner 206 ; 4 N. H. 191.

IV. The tenants take nothing by the deed Jasper Elkins to E. P. Elkins of November 31, 1830, recorded February 7, 1832 ; inasmuch as the demandant or the immediate grantees of Elkins had no notice of the existence of such deed, and all the lots claimed by the plaintiff were conveyed before the recording of this deed.

Moreover, there is but one witness to this deed ; the grantor's wife not being competent, if she authorized her name to be put to the deed as a witness.

V. The objection that the location of lots is too uncertain can not avail the tenants. The tract is to be cut up into lots and ranges, in number corresponding with those upon the plan, and whether they contain more or less than two hundred acres each, the grantors and grantees are bound by the result.

VI. David Perkins repudiated the grant, and is not to be regarded as one of the grantees. Matthews' Pres. Ev. 35; *Harrison* v. *Phillips Academy*, 12 Mass. 456; *Hastings* v. *Baldwin*, 17 do. 552; *Halcey* v. *Whitney*, 4 Mason 206; *Brooks* v. *Marbury*, 11 Wheaton 78.

*Bellows* and *Quincy*, for the defendants.

The deeds under which the demandant claims are void for uncertainty in the description of the land. The land is described by lots and ranges, and no allotment of the land was ever made. The plan referred to gives no description by which the land can be found.

On the whole testimony it was competent for the jury to find that the description was uncertain and void, and it is to be taken that they have so found.

Again: the deeds refer for a description to a plan recorded in the Grafton County Registry and in the Secretary of State's office, and no such record exists.

If that part of the description was stricken out, what remains would be insufficient, inasmuch as no actual allotment was ever made. On this account also the description is imperfect.

II. The conveyance by one tenant in common, under which demandant claims of a specific portion of the undivided land, is void as to the other tenants in common, whose estate the tenant has. *Thompson et al.* v. *Barber*, 12 N. H. 563; *Bartlett* v. *Harlow*, 12 Mass. 348; *Hager* v. *Wiswell et al.*, 10 Pick. 152; *Peabody* v. *Minot et al.*, 24 Pick. 329.

There was no estoppel. Estoppels should be certain to every intent. 1 Greenl. Evid. 83, and cases; *Watkins* v. *Peck*, 13 N. H. 373; *Marston* v. *Brackett*, 9 N. H. 336.

Here was no estoppel, even if no objection that it was by parol.

Corbett *v.* Norcross.

It was not, at the time of the conveyance, communicated to the purchaser, did not influence his purchase, and the records, of which he is presumed to have knowledge, disclosed the whole title. *Great Falls* v. *Worster*, 15 N. H. 426 ; *Parker* v. *Brown*, 15 N. H. 184, 5 ; *Parker* v. *Barker*, 2 Met. 431 ; *Duncan* v. *Sylvester*, 16 Maine 388 ; *Watkins* v. *Peck*, 13 N. H. 373 ; *Burnham* v. *Porter*, 4 Foster 570 ; *Wilton* v. *Howard*, 23 Maine 131 ; *Marston* v. *Brackett*, 9 N. H. 337 ; *Gray* v. *Brackett*, 20 Pick. 193 ; *Glidden* v. *Unity*, 10 Foster 104.

Besides, nothing was paid by the purchaser for the grant, nor by the demandant, and therefore no estoppel.

Again : in case of real estate, no estoppel is created unless by instrument in writing. It comes within the statute of frauds. Law of July 1, 1829.

It is also void under the provisions of the statute regulating conveyances by deed, of June 29, 1829.

Under this statute no deed of bargain and sale, or other conveyance, is effectual unless executed in the manner provided in the act — not even as against the grantor.

Under this statute a deed with one witness is held not valid. *Stone* v. *Ashley*, 13 N. H. 38 ; *Nevin* v. *Belknap*, 2 Johns. 587.

Again : we contend that such an estoppel can be enforced only in equity, although in respect to personal estate it is otherwise ; because the transfer of personal property is embarrassed with none of the technical formalities that attach to real estate. 1 Story's Equity Jurisprudence, sec. 385, note 1, and authorities.

That it is not the doctrine of the law courts in this country. *Heard* v. *Hall*, 16 Pick. 457 ; *Swick* v. *Sears*, 1 Hill 17 ; *Delaplane* v. *Hitchcock*, 6 Hill 17 ; *Jackson* v. *Bugot*, 10 Johns. 462 ; *Pickard* v. *Sears et al.*, 6 Adolph. & Ell. 474.

In *Marshall* v. *Pierce*, 12 N. H. 133, it was considered unsettled whether the doctrine had been adopted in this State by the courts of law. *Wendell* v. *Van Renssalaer*, 1 Johns. Chancery Ca. 344.

Again : the tenant in this case, having purchased the land for a valuable consideration, without notice of the estoppel, is not

bound.　So Walker, his immediate grantor, is in the same situation.　*Nevin* v. *Belknap*, 2 Johns. 573 ; 1 Story's Eq., sec. 393, &c., note 3, and cases cited, and sec. 395 ; *West* v. *Reed*, 2 Hare 349, 259 ; 1 Story's Equity, sec. 393 ; *White* v. *Patten*, 24 Pick. 324 ; *Great Falls Co.* v. *Worster*, 15 N. H. 452.

III. The share of Perkins was purchased and a valuable consideration paid for it.　It was purchased without notice of any trust, if any such existed ; and the purchaser takes it without being affected by the act or deed of Ebenezer P. Elkins.　*Kimball* v. *Blaisdell*, 5 N. H. 535; *Page* v. *Page*, 8 N. H. 187–198 ; *Pritchard* v. *Brown*, 4 N. H. 397 ; *Scoby* v. *Blanchard*, 3 N. H. 170.

IV. The land was conveyed to six grantees, and payment of the price secured by bond, signed by all but Perkins, and also signed by Flanders.

Sargent and Perkins, and all the rest in fact, held their shares in trust for those who paid the purchase money ; and, as paid, a new trust would arise to those who made payment, in proportion to the amount paid.　*Brooks* v. *Fowler*, 14 N. H. 248.

V. Robbins held most of his titles by conveyances merely voluntary, and without consideration, and the demandant paid Robbins nothing, and he purchased of Robbins after the conveyances under which the defendant holds, and after they were recorded, and so had the notice that the record would give.

The defendants hold under a title obtained by a creditor of Robbins' grantor, existing at the time, and the conveyances to the creditor were made to satisfy his claims.　So the plaintiff's title is void as against the tenants.

Conveyances to Robbins were voluntary, and are void against subsequent *bonâ fide* purchasers, by the English law, with or without notice.　4 Greenl. Cruise, tit. 32, ch. 28, sec. 21, and cases ; 1 Story's Equity, secs. 425, 426, 434, and note, and authorities cited ; *Kimball* v. *Hutchins*, 3 Conn. 450.

In New-York and in the Supreme Court of the United States it is held otherwise in cases of subsequent purchasers with notice.　*Cathcart* v. *Robinson*, 5 Peters 280 ; 1 Story's Eq., sec. 427 ; 1 Greenl. Cruise's Digest, tit. 7, chap. 2, sec. 7, note 1;

Atherly on Marriage and Family Settlements 178, 198.    And the notice should be actual and not constructive.  *Sterry* v. *Arden,* 1 Johns. Ch. 261, 270, 271.

But in this case the conveyance could not be regarded as *bonâ fide ;* it is presumed to be fraudulent against existing creditors.    *Kimball* v. *Fenner,* 12 N. H. 248, 250, and cases cited ; *Everett* v. *Reed,* 3 N. H. 55.    Walker was an existing creditor.    *Carlisle* v. *Rich,* 8 N. H. 44.    The conveyances to Walker were made to pay and satisfy such debts.    The conveyances were then void as to Walker, and he is not restricted to the one mode of attachment and execution, to obtain his debt, but may purchase the estate of his debtor.    *Frost* v. *Goddard,* 25 Maine 413 ; *Kingsbury* v. *Weld,* 3 N. H. 30.

The deed of Jasper Elkins to Ebenezer P. Elkins, of November, 1830, divested him of all title, so that nothing passed by his deeds to Robbins.    The wife of the grantor was a sufficient attesting witness, as her incompetency was not necessarily permanent.    *Smith* v. *Chamberlain,* 2 N. H. 440 ; 1 Greenl. Ev., secs. 338, 254 ; *Coffin* v. *Jones,* 13 Pick. 443 ; 2 Kent's Com. 179 ; *Edgell* v. *Bennett,* 7 Vt. 536 ; *Williams* v. *Baldwin,* 7 Vt. 506.

EASTMAN, J.    The demandant in his writ claims a tract of land in this county, containing many thousand acres, called Elkins' Grant.    On the trial, however, which was had upon the plea of *nul disseizin,* he claimed only sundry lots and parts of lots conveyed to him by Joseph Robbins ; some in 1845 and some in 1848.

These lots are described by numbers and ranges, varying from one to sixteen in the number of the lots, and from one to fourteen in the number of the ranges ; and we propose first to consider the title of Robbins, the demandant's grantor, to these lots, and also the title of the tenants, independent of the question of uncertainty in the deeds, the want of reliable plans, and the ground taken that there has never been any division of the tract.

The deed of the Elkins Grant was given by the Treasurer of

the State, on the 31st day of August, 1830, in consideration of $800, in accordance with a resolution of the legislature, approved July 3, 1830, to Jasper Elkins, Samuel H. Walker, Jacob Sargent, Jr., Ebenezer P. Elkins, John Eaton, and David Perkins, all of Thornton. These were the original grantees of the land, and both parties claim under them.

Perkins, one of the six grantees, never accepted the grant, or paid any consideration therefor. The whole evidence in regard to him tends to show that he never had any connection with the business after the passage of the resolution by the legislature, and refused to accept the grant or to consent to the same. Ebenezer P. Elkins, another of the grantees, assumed to take Perkins' share, and settled for the same, and the other grantees acquiesced in that course. The bond to the State for the consideration was given by the five.

It is clear that Perkins never paid or contracted to pay any consideration for the grant, and never accepted the same, and consequently never had any title thereto. No man can make another his grantee without his consent; and a deed made and executed with all the requisite formalities, and even entered upon the public records, is null if not afterwards accepted by the grantee. *Harrison et al.* v. *The Trustees of Phillips Academy*, 12 Mass. 461; *Hastings* v. *Baldwin*, 17 Mass. 552. And a refusal to accept a grant may be shown by parol evidence. *Thompson* v. *Leach*, 2 Salk. 618; *Townson* v. *Tickell*, 3 Barn. & Ald. 31; Matthews' Presumptive Evidence 35, and cases cited.

The estate then vested in the five grantees, after excluding Perkins, and the title of the parties, whatever they had, must be traced from them.

Most of the lots which the demandant claims were conveyed to Robbins in May, 1831, by deeds executed by Jasper Elkins, Jacob Sargent, Jr., and by Ebenezer P. Elkins, three of the original grantees of the State; and Robbins' title to the remaining lots was traced to the original grantees—none of the deeds to him being dated later than 1834.

These deeds to Robbins are fair upon their face, and purport

to be for a good consideration. It is said, however, and contended by the tenants, that most of the lots were conveyed to Robbins to enable him to make sales for the original grantees; that they were mere voluntary conveyances, and void as to creditors. But without stopping to enquire whether the tenants, or their grantor, Walker, are in a position to take advantage of this objection, (a point which, upon investigation, would probably be found to be against them;) assuming that the conveyances to Robbins were for the purposes stated, and that the deeds were of the character claimed, it is a sufficient answer to this objection that the evidence in the case shows that a valid consideration was paid by Robbins for such of the lots as were not re-conveyed by him. As one of the witnesses expresses it, " What land we put in his hands he hadn't sold, he either deeded back or paid us for. We settled all the dealings we ever had together."

Another objection to the deeds of Robbins is, that Jasper Elkins, who had conveyed to him some of the lots, had parted with his title to the property in November, 1830, by deed given to Ebenezer P. Elkins.

With regard to this deed, the evidence tends to show that it was made by Jasper to Ebenezer P., to enable him to sell the lots in New-Durham; that it was without consideration, and to be returned in case the land was not sold; that no sales were made, but the deed was accidentally not returned. But it is unnecessary to enquire into the consideration of this deed, as it appears to be fatally defective for want of due execution. It was made while the statute of 1829 was in force, and could not operate as a conveyance, even against the grantor and his heirs, for it was attested by one witness only. *Stone* v. *Ashley*, 13 N. H. 38; *Gage* v. *Gage*, 10 Foster 420. The deed purported to be witnessed by one McCoy and Jane Elkins. The attestation by McCoy was duly proved, and was unexceptionable, but the name of Jane Elkins upon the deed was a mere nullity. She was the wife of Jasper Elkins, the grantor, and her signature as a witness to her husband's deed was no more than the name of the grantor himself as a witness. It appears also that she did

not write the name herself, but that it was written by Ebenezer P. Elkins, the grantee; whether by her consent or not is doubtful from the testimony. Moreover, this deed was not recorded till 1832, some months subsequent to the time when Jasper Elkins conveyed to Robbins, and no notice of its existence was given to Robbins. But even if this deed should be held good, it would only go to defeat the demandant's title to the lots claimed under Jasper Elkins. It could not affect those claimed under the other original grantees.

Thus far, Robbins' title to the lots conveyed to the demandant stands well enough. He would appear to have been the owner of them all prior to 1835; and the demandant, having Robbins' title, must succeed unless defeated by other matters not yet considered. The consideration paid by the demandant to Robbins is immaterial. The tenants do not claim under Robbins, either by deed or as his creditors, and are therefore not in a position to call in question the consideration.

We will now look at the title of the tenants. They claim by two deeds from Samuel H. Walker; one dated June 26, 1844, conveying four undivided sixths of the Elkins Grant, and the other dated July 3, 1844, conveying all that he acquired by the deed of William C. Thompson.

Walker was one of the original grantees, but he conveyed all his interest in the grant to R. M. N. Smyth, August 23, 1830, soon after the deed from the State was given. And Eaton, another of the grantees, on the 25th of December, 1830, conveyed his interest in the grant to Sargent and Enoch Flanders; so that after this date the grant was held by the two Elkinses, and Sargent, Smyth and Flanders; Walker and Eaton giving place to Smyth and Flanders.

Whatever title then Walker had to the premises at the time he conveyed to the tenants, must have been derived from the other grantees, because he had sold his share to Smyth; and, accordingly, to show that Walker had title to the four sixths conveyed to the tenants on the 26th of June, 1844, they introduced a deed from Ebenezer P. Elkins to Walker, dated May 9, 1843, con-

veying one undivided sixth part of the grant; also a deed from Jasper Elkins to Walker, dated September 5, 1843, conveying an undivided sixth; and a deed from Flanders to Walker, dated May 4, 1843, conveying the same quantity. *Primâ facie,* these deeds make out a title in the tenants to three undivided sixths of the tract. The tenants then attempt to show title in Walker to the other sixth conveyed in this deed, by introducing the deed of Noah W. Perkins—son of David Perkins, the original grantee, of whom we have spoken—to Walker, dated October 5, 1843, conveying one undivided sixth of the grant; the deed to be void unless the grantee indemnify the grantor against claims against his father or him concerning the land. Also the will of David Perkins, approved in 1835, in which was a general residuary clause in favor of his son, Noah W., but no mention made of land in this grant.

With regard to the other deed of Walker to the tenants, which was dated July 3, 1844, the tenants introduced Thompson's deed to Walker, dated July 2, 1844, conveying all the interest acquired by him by deed of J. Sargent, dated June 10, 1841; and then the deed of Sargent to Thompson, dated June 10, 1841, conveying all his interest in all lands in Grafton county, including Elkins' Grant.

It will thus be seen that Walker's title, which the tenants have, was all derived from the original grantees or those who held their title, by deeds dated some ten years subsequent to those of Robbins. Robbins acquired his title mostly in 1831, and all before 1835, and Walker acquired his chiefly in 1843. Walker's deeds cover the whole of the grant except the sixth, which fell to him, and which he conveyed to Smyth in 1830; while those of Robbins cover only a small part of it, being certain lots in different ranges. The grantors of Robbins are in part those of Walker, and, as stated at the outset, both derive their title from the same source.

The original grantees of the State were jointly interested in the land, and it was competent for them to divide the same among themselves by metes and bounds, and lots and ranges; or they

could convey their undivided shares without any division. They could make a partition, either by vote or by deed. *Coburn* v. *Ellenwood*, 4 N. H. 99; *Atkinson* v. *Bemis*, 11 N. H. 44; *Frothingham* v. *Adams*, 3 Mass. 352; *Springfield* v. *Miller*, 12 Mass. 415. After a partition their interests would no longer be in common but in severalty, each one owning the share set off to him; and their conveyances would have to be made accordingly.

It becomes, therefore, a vital question in the case, whether there was ever any partition of this tract of land, binding upon the original grantees and those claiming under them. The demandant contends that there was, and that Robbins, his grantor, acquired title to several parcels of the land, being the lots specified in his deeds to the demandant; while the tenants contend that there was never any division; that the tract remains in common unto the present time; and hence that the deeds to Walker of undivided interests were good, and that his title must prevail over that of Robbins.

Was there or not, then, ever any partition of this tract? There is some evidence tending to show that there was. Jasper Elkins says that there had been a division of the land; that soon after obtaining the grant there was a meeting of the grantees at his house, and that Sargent and Ebenezer P. Elkins were present, but he was not certain in relation to Eaton and Walker; that he was himself chosen moderator and Sargent clerk, and acted as such at all subsequent meetings, and that he kept the records; and evidence was offered to the court of the loss of the records and of diligence in attempting to find them.

There was also a meeting of a majority of the proprietors on the 27th of January, 1831, at Boston, at which meeting it is agreed by the parties that lots were set off to Smyth, who at that time was the owner of Walker's share. And an examination of the deeds shows that these lots were thirty-nine in number, in different ranges of the tract, and one fifth of the whole number.

It is manifest that there was an attempt made to complete the partition of the tract, by the drawing of lots and the giving of quitclaim deeds, at the meeting on the 27th of January; and the

agreement shows that so far as Smyth is to be regarded, his lots were set off. We are aware that the agreement goes to the extent that there was no setting off of lots at that time, beyond those to Smyth, and we so consider it. But this does not exclude the inference from the testimony that an attempt was made to set off to others, and that a drawing of lots was had. It shows that the business was at that time completed only so far as Smyth was concerned; and Smyth it appears has never attempted to repudiate the division, or to claim beyond what was then allotted to him. The tenants and Walker make no claim under him.

As the case stands, upon a verdict for the defendants, the court cannot say that there was ever any legal partition of the tract among all the grantees, although there was evidence competent to be submitted to the jury upon that point. But we think that the tenants and Walker are estopped to deny that there was such a partition, and that the court are bound so to pronounce it.

It is well settled in equity that if a party is present and sees another sell and convey property to which he may assert a title, without disclosing his title, or objecting to the conveyance, and the sale is made with a full knowledge on his part, he will be estopped by his silence from setting up his title thereafter; because, under such circumstances, his conduct would operate as a fraud upon the purchaser, if he might afterwards take from him what he had thus permitted him to purchase, without objection, from one who claimed to be the owner. And this rule applies in equity to both real and personal property. *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 354; 1 Story's Eq., section 385; *Hobbs* v. *Norton*, 1 Vernon 136; *Marshall* v. *Pierce*, 12 N. H. 127; *Watkins* v. *Peck*, 13 N. H. 360; *Wells* v. *Pierce*, 7 Foster 503; *Heard* v. *Hall*, 16 Pick. 457.

It is contended, however, by the tenants that this rule adopted in chancery does not obtain at common law, at least so far as real estate is to be affected; and there are authorities which sustain this position, as some of those cited by the counsel for the defendants show. But ought the rule to be confined to courts of equity? It is clear that it obtains at common law as to personal property,

and that effectual relief may be administered at law in such cases without resort to equity. *Thompson* v. *Sanborn*, 11 N. H. 201; *Pickard* v. *Sears*, 6 Ad. & E. 474; 1 Term R. 762; 6 do. 556; *Marshall* v. *Pierce*, 12 N. H. 133, 134. And after a careful examination of the question, we are satisfied that in the application of the rule no well founded distinction can be traced between real and personal property.

In *Runlet* v. *Otis*, 2 N. H. 169, the demandant, a mortgagee, was present at and advised a conveyance of the premises from the mortgager to the tenant, without disclosing the existence of the mortgage, which was of an earlier date than the conveyance; and it was held that his conduct was fraudulent, and estopped him from recovering the land against the tenant. And in *Morse* v. *Child*, 6 N. H. 521, where one who had acted as an appraiser of land set off upon an execution was permitted to show that nothing passed by the extent, it was intimated in the opinion of the court that if the extent had been sufficient to pass the land, and the appraiser had asserted no claim when the extent was made, he could not have been permitted to set up a title against the extent.

In *Marshall* v. *Pierce*, 12 N. H. 127, the question is stated with a *quœre*, whether the rule applies to both real and personal property. The point was necessary to be decided in that case, but *Gilchrist*, J., in delivering the opinion, says that as the cases now stand in this State, *Runlet* v. *Otis* is an authority for the position that the rule in equity has been adopted here at law in relation to conveyances of land.

In *Watkins* v. *Peck*, 13 N. H. 373, *Parker*, C. J., after stating the rule in general terms, that a party is to be estopped on the ground of fraud, says that there does not seem to be any sound difference in this respect between a sale of real and personal property; and he cites *Runlet* v. *Otis* and *Morse* v. *Child*, as sustaining the observation. And the same distinguished jurist, in *Parker* v. *Brown*, 15 N. H. 184, which was an action at common law for covenant broken, says that a party is estopped to set up title where he has permitted his land to be sold and

conveyed under such circumstances that the concealment of his title would be a fraud upon the grantee, if he was permitted to set it up afterwards.

Perhaps the evidence to establish an estoppel *in pais* as to real estate, should be more clear and decisive than as to personal. The sale and transfer of real estate is surrounded with more formality and solemnity than personal, and the title thereto is guarded with more care. But the ground upon which a party who stands by and sees his property conveyed with a knowledge of what is doing, and does not assert his rights, is to be estopped from afterwards asserting those rights, is that of fraud—fraud upon the purchaser; and it is difficult to see how that which is fraud in regard to personalty can be held honest as to realty.

In *Heard* v. *Hall*, 16 Pick. 457, although it is said that the rule does not appear to have been adopted at common law, yet it was held in that case that the guardian of a person *non compos*, who had sold real estate belonging to his ward, under a license of court, and conveyed the same with a covenant that he was fully authorized to sell the granted premises, was estopped from setting up a claim in his own right to any portion of such real estate under a previous conveyance to him. And *Wilde*, J., in delivering the opinion of the court, says, that the general principle is well established, that a party is not allowed to plead or to prove any matter inconsistent with the terms of his deed.

Again : estoppels are binding upon parties and privies; privies in blood, as the heir ; privies in estate, as the feoffee, lessee, &c. ; privies in law, as those upon whom the law casts the estate. Co. Litt. 352, a. ; 1 Greenl. Ev., sec. 23 ; *Trevivan* v. *Lawrence*, 1 Salk. 276 ; Comyn's Dig., Estoppel, B & E, 10; *Shelley* v. *Wright*, Willes 9 ; *Crane* v. *Morris*, 6 Peters 611 ; *Carver* v. *Jackson*, 4 Peters 83 ; *White* v. *Perkins*, 24 Pick. 324; *Fairbanks* v. *Williamson*, 7 Greenl. 96.

In *White* v. *Perkins*, 24 Pick. 324, it was held that if one, having no title to land, conveys the same with warranty, by deed duly recorded, and he afterwards acquires a title and conveys to a stranger, the second grantee is estopped to aver that the grantor

was not seized at the time of his conveyance to the first grantee. See also *Wark* v. *Willard,* 13 N. H. 389.

With these suggestions as to the law we will examine further the facts. It will be recollected that at the meeting in January, 1831, the proprietors were Jasper and Ebenezer P. Elkins, Jacob Sargent, Flanders and Smyth; five of them — Smyth holding Walker's interest, and Flanders Eaton's. After this, in May, 1831, Jasper Elkins, and Sargent, and Ebenezer P. Elkins conveyed sundry lots in the tract, described by numbers and ranges, to Robbins. Smyth also made conveyances of lots, and Robbins subsequently obtained title thereto. In regard to Smyth, however, as before observed, the tenants do not claim under him, and he has never made any conveyances inconsistent with the division.

Soon after this attempted division, in January, 1831, various lots were sold by each of the five to different individuals, and conveyances were made by them respectively, describing the land by lots and ranges, and they received payment for the same. All of them made conveyances of lots prior to 1835. They all stood by and saw the others make conveyances by lots and ranges, and all participated in the profits; and they cannot now be permitted to repudiate those conveyances upon the ground that there had never been any division of the land among them. Sargent and the Elkinses, who made the conveyances directly to Robbins, and Flanders, who stood by and saw what was done, are not now to be heard to say that these conveyances are all void because there was no legal partition of the grant. It would be a most palpable fraud for the owners of common land to represent it as divided and set off into lots, and to sell agreeably to such representation, and then turn round upon the purchasers and deny a division.

But it is said that Walker is not to be estopped by what the Elkinses and Sargent and Flanders did, because he had no notice of the doings. He is, however, privy in estate with them, and upon general principles, as we have seen, would be bound. But aside from the law, the facts will not warrant the position.

Walker was one of the original grantees of the State, and, as has been stated, sold to Smyth in August, 1830. But after the meeting in January, 1831, he conveyed to Smyth thirty-nine lots in the tract, describing them by lots and ranges; and he thereby not only showed that he had knowledge of the partition, but recognized it as valid and effectual by his deed.

All of Walker's grantors, therefore, except Perkins, as well as Walker himself and the tenants, are estopped to deny the division of this tract into lots and ranges, and a partition among the proprietors, as specified in the demandant's deeds. As to Perkins, we have already seen that he had no interest or title to convey. His ancestor refused to accept the grant, and never did accept it or pay any consideration therefor. The ancestor therefore had no title to the property, and the heir could not take by will what the ancestor did not own.

A further objection to the demandant's right of recovery is, that his deeds are void for uncertainty; and it appears that there was never any laying off of the land into ranges and lots upon the ground. There was, however, a plan made by Cummings after some partial surveys, dividing the tract into ranges and lots. Upon this plan the proprietors acted in making their sales and conveying the lots; and we see no difficulty in running out the tract from this plan and the boundaries given in the deed from the State to the original grantees. In that deed the corners of the tract are distinctly stated; the length of the lines between the corners can be ascertained, and then the tract be divided into the number of ranges and lots designated on the plan. The lots were supposed to contain two hundred acres, but that is not material. After the tract is marked off into ranges and lots agreeably to the plan, as near as may be, the lots sold to the demandant and others can be found, and they will take the quantity which the lots shall contain, be it more or less. That is certain which can be made certain. In point of law the lots can be run out according to the plan, and a jury could not be permitted to find to the contrary.

The reference to a plan in some of the deeds as being in the

county records or Secretary's office, is not material. It is but *falsa demonstratio*, which *non nocet*. The history of the transactions shows that the court can give an interpretation to the deeds, and can understand what the numbers of lots and ranges mean ; and the descriptions will therefore answer.

After a protracted and tedious examination of the mass of papers in this case, and the questions arising upon the same, we are satisfied that the verdict taken for the defendants should be set aside, and that, according to the provisions. of the case, a verdict should be entered for the lots specified, and that there should be judgment upon that verdict. There is no question which we think requires to be sent to the jury.

In arriving at this conclusion we have not omitted to examine all of the points taken for the tenants, both in the case as drawn and in the arguments furnished, and made at the bar. The principal points, however, as we view the case, are those which we have stated and endeavored somewhat to discuss ; the others being incidental to them. They might all be discussed with more particularity did we deem it necessary, but the decision of the case does not seem to require it.

*Verdict set aside and judgment for the demandant.*