Hillsborough
No. 84-318

PETER M. FISHER & a.

v.

GEORGE S. KOPER, ROBERT K. REESE & a.

October 24, 1985

*Winer, Pillsbury and Bennett,* of Nashua (*Peter W. Bennett* and *Luci S. Pillsbury* on the brief, and *Ms. Pillsbury* orally), for the plaintiffs.

*Arthur O. Gormley, Jr.,* of Nashua, by brief for the defendant *Robert K. Reese.*

KING, C.J. This appeal arises from an order of the Superior Court (*Dalianis,* J.) setting aside a conveyance by deed from the defendants George and Sophie Koper to the defendants Robert and Candace Reese, and confirming good title to the same property in the plaintiffs. We affirm in part, reverse in part, and remand.

The relevant facts are as follows. Defendant Robert K. Reese, a real estate broker, performed accounting and other services from 1972 to 1977 for defendant George S. Koper, a severely disabled diabetic. George Koper, now deceased, his wife, now incompetent, and two others, Louis M. Janelle, Esq., and Paul Fisher, Jr., were stockholders of a land development corporation known as Indian Valley, Inc. Koper had begun taking Reese to corporate meetings sometime during 1977, at which time discussions began regarding the dissolution of the corporation; and, in January 1978, Koper indicated to his fellow stockholders that Reese had a power of attorney to act on his behalf.

The plans for the corporate dissolution were implemented in the spring of 1978. Under the liquidation agreement, Koper was to take as part of his share the "back land," a multi-acre swampy parcel that Indian Valley, Inc. had left unsold and undeveloped. On April 21, 1978, Koper received the property by an executed deed in accordance with the liquidation agreement. For his past and current services, Reese claimed that Koper owed him approximately $2,800.00, although he had never sent any bills and never kept any time or account records. Koper expected to receive some money in June 1978, to pay Reese, but, on April 30, 1978, he and his wife executed a deed conveying the back-land property to Reese and his wife. Reese conceded that at least through June 1978 the land was really nothing more than security for a debt, and that thereafter he simply held the deed for a "grace" period about which he never informed the Kopers, before recording it in August 1978.

Meanwhile, on May 19, 1978, the corporation executed an amended deed which corrected the original deed from the corporation to Koper. Reese, acting under his power of attorney for Koper, helped the corporation's attorney, Louis Janelle, to prepare this deed and took the deed from attorney Janelle to have it recorded. Reese never mentioned to Janelle that he also held a deed to the same property.

Furthermore, Reese never obtained a correction of his own deed. Reese conceded that he had not obtained a corrected deed because, at that time, he intended to return his deed to the Kopers once he was paid the money owed.

Throughout the summer of 1978, Paul Fisher, Jr., talked with Koper about buying the back-land property. On August 21, 1978, at a corporation meeting, Fisher told Koper that his sons definitely wanted to buy the property. Both Fisher and Koper claimed that Reese was present at the meeting; however, Reese and attorney Janelle both said that he was not present. Attorney Janelle did testify that Koper had called him twice, on August 6 and 8, to say that Reese wanted to pay $2,000 for the property.

The day after this meeting, August 22, 1978, at 8:44 a.m., nearly four months after receiving it, Reese recorded his deed. On the same date, Koper fired Reese and revoked his power of attorney. Reese claims that it was entirely coincidental that he recorded his deed the day after Koper agreed to sell the property to the plaintiffs and on the same day he was fired.

Attorney Janelle, as part of the preliminary negotiation with respect to a sale by Koper to the Fisher sons, ran a title search on the property up to August 4, 1978. A search was not run for the period between August 4 and September 7, 1978, on which date Koper and his wife executed a deed conveying the property to the Fishers. The Fisher sons, the plaintiffs, paid the Kopers $2,000.00 for the property, giving a deposit on September 4, 1978, and paying in full on September 10, 1978. They recorded their deed on September 11, 1978, unaware of Reese's deed recorded on August 22.

The plaintiffs then obtained permits and town variances, began building an access road, and cleared the property in preparation for two house lots. The plaintiffs also paid the property taxes from 1978 to 1981. Reese visited the property one time during this period, but the plaintiffs did not see him. He made no improvements to the property; he never paid any real estate taxes on it; and he never gave the Kopers any written document to demonstrate that the claimed debt was cancelled. Reese also never told anyone about his deed to the property.

The plaintiffs had no actual knowledge of Reese's interest until April 1981, when a mortgagee bank financing a previously-existing house, which the plaintiffs were moving onto the property, found a duplicate deed to the property. The bank immediately notified the plaintiffs of the prior deed to Reese, and advised them to suspend their plans.

Subsequently, the plaintiffs filed a bill in equity to set aside the conveyance from the Kopers to the Reeses. George Koper died just

prior to the trial. On May 16, 1984, the superior court found that Reese's deed was only intended to be security for a debt and that Reese's subsequent recordation did not change the nature of the conveyance. The court further found that Reese's act of recording and his claim of ownership constituted a constructive fraud upon the Kopers and the plaintiffs and that, because of the constructive fraud, Reese's recordation was invalid. The court ordered that the conveyance to Reese be set aside; that good title pass to the plaintiffs by their deed from the Kopers; that Reese have no interest in the property; and that the petition which the plaintiffs had filed against the Kopers be dismissed. Reese has appealed.

The issues which this court must resolve are these: whether the superior court erred in finding that Reese's deed was but a deed in mortgage and not a deed absolute; whether the nature of the conveyance subsequently changed during the period in question; and whether Reese's claim to outright ownership of the back-land property worked a constructive fraud upon the plaintiffs and the Kopers. Additionally, we are asked to resolve subsidiary questions regarding the trial court's exercise of its equitable powers in this case.

The trial court found that the deed from the Kopers to Reese, although absolute on its face, operated only as security for a debt, that is, as a mortgage. As we noted in *White v. Ford*, 124 N.H. 452, 455, 471 A.2d 1176, 1178 (1984):

> "A deed absolute on its face may be proven by parol evidence to have been intended by the parties to operate as security for a debt. . . . The intentions of the parties at the time of the conveyance are determinative, . . . but those intentions may be inferred from the situation of the parties and their actions after the contract was executed."

(Citations omitted.)

Where, as in this case, the grantors were unavailable to testify, and the trial court must consider extrinsic evidence in order to deduce the intentions of the parties, we will adopt its construction of the contract so long as it is supported by sufficient evidence. *Id.*

Our review of the record compels us to conclude that the evidence does support the finding that the deed was given to the defendant Reese as security for a debt. Factors pointing to this conclusion include Reese's admission that, at least initially, the deed was merely security for a debt; the Kopers' subsequent conveyance of the same property to the plaintiffs; Reese's testimony that he had given the Kopers a "grace" period because he preferred cash; and Reese's

failure to record his deed until almost four months after its execution.

By law, Reese's recordation of the deed prior to the plaintiffs' recordation of theirs did not necessarily perfect title in Reese. "An executed deed validly transfers title only when it is 'delivered' by the grantor with present intent to convey and is 'accepted' by the grantee." *Arwe v. White*, 117 N.H. 1025, 1028, 381 A.2d 737, 740 (1977). As noted, the evidence supports the inference that the Kopers, the grantors, did not intend to convey the property to Reese when they gave him the deed. Furthermore, mere physical possession of the deed by a grantee does not in and of itself constitute a delivery, *id.* at 1030, 381 A.2d at 740; and, "[i]n the absence of other evidence, delivery may not be presumed because [a deed] was recorded." *Newbury v. Parsons*, 103 N.H. 96, 98, 166 A.2d 231, 233 (1960).

Whether any subsequent conduct of the grantors, the Kopers, changed the character of the deed which they originally gave Reese could not be determined except circumstantially, for Mr. Koper died shortly after these events transpired. In any case, based upon its hearing of the testimony and upon facts established at trial, the trial court determined that Koper's inaction with respect to the deed to Reese did not work a ratification of the instrument. The trial court found that the Kopers' subsequent conveyance of the back-land property to the Fishers was an act consistent with their continual ownership and inconsistent with a prior conveyance to Reese.

The terms of the equitable mortgage were not proved at trial with any degree of particularity concerning either the precise amount owed to Reese or the terms of repayment of the debt. Reese claims that Koper was to pay off the debt in June; however, subsequent to that date he failed to communicate with Koper about the debt and, under these circumstances, the "grace period" that he gave to Koper was essentially meaningless. The only "acts" proven with certainty were the recordation of Reese's and the Fishers' deeds. The trial court is in the best position to judge the persuasiveness of the evidence and the credibility of the witnesses, and we will generally not review such findings. *93 Clearing House, Inc. v. Khoury*, 120 N.H. 346, 350, 415 A.2d 671, 674 (1980). Thus, we defer to the court's finding that the Kopers' subsequent failure to pay Reese did not constitute a ratification of Reese's deed.

The trial court also found that Reese's recordation and claim of ownership to the property worked a constructive fraud upon the Kopers and the plaintiffs.

"[A] person who accepts a conveyance with the understanding that it operates merely as a security for the payment of a debt owing to him by the grantor is chargeable with constructive or quasi fraud if he subsequently denies the existence of such an understanding, and the instrument will be enforced by a court of equity according to the contract of the parties."

*Dietrichson v. Western Loan & Building Co.*, 123 Cal App. 358, 360–61, 11 P.2d 64, 65 (1932); *Sprigg v. The Bank of Mount Pleasant*, 39 U.S. (14 Pet.) 201, 206 (1840); 55 AM. JUR. 2d *Mortgages* § 48. Application of the doctrine of constructive fraud is a device for preventing the unjust enrichment of one person at the expense of another, even though no intentional wrongdoing may be involved. *Bernard v. Bernard*, 108 N.H. 360, 364, 236 A.2d 685, 688 (1967). On the basis of its finding that Reese had committed constructive fraud, the trial court ordered that the conveyance from the Koperses to Reese be set aside and that the plaintiffs take good title to the property, free and clear of any interest of Reese. Reese argues that the trial court misapplied the doctrine of constructive fraud in ordering that he has no interest in the property whatsoever.

Viewing the record as a whole, we find sufficient evidence to support the trial court's finding of constructive fraud. Reese admitted that his deed was originally to operate only as security for a debt, and the coincidental *timing* of the recording of his deed, and the act itself of recording and claiming ownership, in breach of his understanding with the Koperses, support the finding.

Although the superior court's equitable jurisdiction extends to granting relief from the effects of another person's fraud when the party wronged seeks other than damages, R. WIEBUSCH, 5 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 2043(7) n.13, at 493 (1984), and although a trial court in the exercise of its equitable powers may "shape and adjust the precise relief to the requirements of the particular situation," *Dunlop v. Daigle*, 122 N.H. 295, 300, 444 A.2d 519, 521 (1982) (quoting *Webb v. Rye*, 108 N.H. 147, 153, 230 A.2d 223, 228 (1967)), we think that the invalidation of Reese's equitable mortgage exceeded the authority of a court of equity in a case where it has made a finding of constructive fraud. *See White v. Ford*, 124 N.H. at 455, 471 A.2d at 1178 (court held deed given as security for a debt should be deemed a mortgage giving the mortgagee an equitable right of redemption).

Since we agree that the record supports the trial court's finding of constructive fraud, we remand with the following direc-

tives: (1) that, if timely, Reese not be prohibited from bringing a claim against Koper's estate, and that a constructive trust be placed upon an amount equivalent to Reese's claim until he has proven the debt to the executor of the estate, and (2) that, should the Koper estate be unable to satisfy the debt proved, Reese not be prohibited from claiming on the debt against the plaintiffs' title to the land, subject once again to his ability to prove the precise amount of the debt.

Having affirmed legal title to the property in the plaintiffs, arguments of unjust enrichment raised by the plaintiffs are moot. Finally, in light of our disposition of the case, we have no need to deal with the issue of Reese's credibility as raised on appeal.

*Affirmed in part; reversed in part; remanded.*

JOHNSON, J., did not sit; the others concurred.